## WALKER v. CUTHBERT & STANLY.

1. When a demurrer is not shown to be disposed of by the judgment entry, the inference is that it was waived.

2. When a suit is improperly discontinued as to one of the defendants, this will not avail another who afterwards appears and defends the suit.

3. A promise, after a suit is determined, to pay an attorney a sum of money out of the monies to be collected in that suit, is not champertous.

4. An agreement to pay $500 to be paid out of monies collected in a specified suit in Dallas chancery court, for professional services in said case, when shown by extrinsic evidence to have been made after the decree, is a promise to pay out of the particular fund provided by the suit, and the right to recover is not impaired, although the decree is reversed, when the parties afterwards obtain satisfaction through an arbitration based on the principles of the decree.

5. Such an agreement made after the decree is not on condition that future services shall be rendered, and therefore the refusal of the promisees to attend the suit in the appellate court, will not impair the right to recover the sum stipulated.

Writ of Error the Circuit Court of Dallas.

Assumpsit by Cuthbert & Stanly v. Walker, who was sued in the first instance with one Bowie, but the latter not

being served with process, the suit was discontinued as to him, when the declaration was filed.

The declaration, besides the common counts, has a special count upon an instrument in writing, in these terms, to wit: "It is agreed that Cuthbert & Stanly are to receive, in addition to the sum of $500 secured by a note, by us this day given, the further sum of $500; the further sum of $500 to be paid to them out of the monies to be collected in the case of Meslier, guardian, v. Bowie, in Dallas chancery court, for professional services in said case. 11 July, 1842." Signed by the defendant and Bowie. In the special count this is stated as a promissory note, or instrument in writing, and the count contains the averments necessary to refer the contract to a suit therein described. It then avers that the services therein spoken of, were services rendered by the plaintiffs on behalf of the defendant and Bowie, in the establishment of principles of right and equity by judicial decision, under which the defendant and Bowie became entitled to and received certain large sums of money, to wit: $1,500. By means, &c.

The defendants pleaded—1. Non-assumpsit. 2. Failure of consideration. 3. Want of consideration. 4. As to the special count: that the defendant had not received any sum of money under the said decree in chancery, as alledged in the declaration. 5. Also to the special count: that no monies had been by the defendant and Bowie collected or received in the said suit described in the declaration, but on the contrary, said suit was dismissed and so remains dismissed, at the cost of the complainants. The plaintiffs replied to the two last pleas, but, as they state, in issues subsequently formed, these being overruled on demurrer, they joined issue. The judgment entry shows no disposition of the demurrer, if any was interposed.

At the trial, the plaintiffs produced and read the instrument which is above set out. They also shewed that a suit in the court of chancery for Dallas county was commenced and finished by William T. Meslier, guardian, against George Bowie, the object of which was to recover of Bowie certain slaves in the bill mentioned, and conversion in money, for the value of their hire. That Bowie resisted the claim to the extent

sought by the bill, but admitted an indebtedness on his part, to George S. Bowie, one of the makers of the instrument, and Sarah R., now the wife of Walker, his late ward, and his liability to account with them on a different rule from the one contended for by the complainants. That during the pendency of that suit, Cuthbert, of the firm of the plaintiffs, attended in said case at two or more terms of the chancery court, and argued it at the term when the chancellor gave his decree in favor of the complainants, and on the principle contended for by them. That the decree was rendered on the same day the agreement bears date. It was also in evidence that the decree was afterwards reversed in the supreme court, and the bill dismissed for the reasons shown in that case. [2 Ala. Rep. 406.] The mistake of the parties to the cause having been made, not by Cuthbert, but by other solicitors. The plaintiff proved by the defendant in that suit, that prior to the rendition of the decree upon the bill, he paid to the defendant and George Bowie, at different times, about $3000 on account of the matters involved in that suit; that after the decision of the supreme court, he entered into an arbitration of the matters in dispute, and in pursuance of the award of arbitrators, he delivered up the slaves which had been the subject of controversy, and paid over $3000 additional. All this was after the reversal had, when no suit was pending. The witness stated further, that the decree which had been rendered in the chancery suit, and reversal, did not influence him at all in yielding to an arbitration, but he was induced to take this course for other considerations. There was also evidence tending to show the value of the services of Cuthbert & Stanly. It was also proved that Cuthbert & Stanly did not appear in the supreme court to represent the complainants in that suit, and that they employed other counsel. It was also in evidence that a retainer to appear in a suit in a court below, did not, according to the practice and custom of lawyers, require the counsel to appear in the supreme court, under the same retainer; but that when a fee was stipulated for, on condition of final recovery, or when upon the contingency of success, in making money out of the suit, that then the duty was, under such contract, to attend the case in the supreme court, if it should be taken there.

The plaintiff read to the jury from the minutes of the circuit court, a copy of the submission to arbitration, together with the award of arbitrators, and what purported to be the judgment of the court, entered on the return of the award, which judgment was so entered at the motion of George Bowie, and was resisted by Walker the defendant, and the other Bowie. There was no other evidence in relation to the award than the said minutes, and it did not appear the arbitration was made under the order of any court, or that there was then or since the reversal of the decree any suit depending between the parties. The entry on the said minutes, recited and set out the principles established by the chancery court, as the basis on which the arbitration was to be conducted, with the exception of the non-joinder of parties.

The court charged the jury, that the plaintiffs were entitled to recover the full amount of the sum specified in the agreement, provided it appeared to the jury that the defendant Walker, and George S. Bowie, had received the monies which the chancery suit, referred to in the agreement, was instituted to recover, although the monies had not been received under that suit, but had been received under another or different arrangement between the parties. That the agreement was a promise to pay the sum out of the particular fund, and depended only on the collection of the particular fund referred to in the agreement, and if the defendant and George S. Bowie received that fund in any way, the plaintiffs were entitled to recover the sum specified in the agreement. The defendant asked the court to charge, that if the plaintiffs, under their contract, were to attend the cause in the supreme court, in the event the cause was removed there, and that it was so removed, and the plaintiffs requested by the defendant to attend in that court, and that the plaintiffs refused so to do, and thus compelled the defendant to expend money in the employment of counsel in that court, then these were circumstances which the jury might consider in estimating the damages.

In reference to this request, it is stated in the bill of exceptions, there was evidence the plaintiff had been requested by Walker, to attend to the cause in the supreme court, and that the plaintiffs declined, on the ground such services were

no part of their agreement.   The court refused to give this charge.

The defendant excepted, as well to the charge given, as to that refused.   He now assigns that the court below erred—

1. In not refusing the demurrer, and sustaining it to the special count of the declaration.

2. In giving the charge above stated, and refusing that requested by the defendant.

3. In rendering judgment for the plaintiffs.

G. R. Evans, for the plaintiff in error argued—

1. Although there was no demurrer to the special count of the declaration, yet the record was opened by the demurrer to the pleas, and more particularly by that to the replication.   The count is demurrable, because it does not aver any breach of the agreement, either in terms or in legal effect.

2. The suit was discontinued when that entry was made as to Bowie.   The instrument declared on is not a *bond, bill, or covenant*, which are the terms used by the statute, allowing discontinuances when all parties are not served.   [Dig. 361, § 62.]   A note is a promise to pay absolutely.   [Chitty on Bills, 548; 1 Steph. N. P. 763; Ib. 761.]   And a promise to pay on a contingency, which may or may not happen, is not a note.   [Coolidge v. Ruggles, 15 Mass. 387; Tucker v. Maxwell, 11 Ib. 141; Fisk v. Watt, 22 Pick, 83; Cushman v. Haynes, 20 Ib. 132; Clark v. King, 2 Ib. 324; West v. Carleton, 4 Por. 205.]   As to the effect of a discontinuance, see Givens v. Robbins, 5 Ala. 676.

3. The agreement is void for champerty.   [1 Pick. 415.]

4. The construction given to the agreement by the circuit court, entirely changes its nature.   The agreement is to pay out of the proceeds of the particular case, yet the court renders it out of the particular fund.   The intention of the parties was, to identify the plaintiffs with the suit, by giving them an interest in it, and the payment was conditional, upon the successful prosecution of that suit.   If the plaintiffs, by the compromise, have been prevented from going on with

28

the suit, their remedy is not on the agreement itself, but in another form of action. [2 Kent, 555; Bates v. The Bank, 2 Ala. Rep. 432.] In Higgins v. Gray, 8 Mass. 385, under very similar circumstances, the party was held to the terms of his contract, and a compromise was considered as a matter not provided for by the contract.

5. The agreement does not show the services to be paid for had terminated with the decree. It is therefore open to explanation, and the proof shows the plaintiffs were bound to attend the case in the supreme court. The expense occasioned to the defendant by the refusal to attend there, was proper to be considered by the jury in estimating the damages.

J. A. CUTHBERT and R. SAFFOLD for the defendants in error, insisted—

1. That the defendant's demurrer to the replications did not open the declaration. The rule is, that a demurrer, at any stage opens the entire record, but this applies only when the party demurring has himself committed a fault in pleading. It is absurd to suppose a party can have judgment, not merely that the particular matter demurred to is bad, but that he shall impose on the court the burthen of examining previous pleadings, which he himself has not questioned.

2. As to the supposed discontinuance, the party has waived it, if it be conceded there is one. Any proceeding after the discontinuance is a waiver. [Com. Dig. Discontinuance, W. 6; 4 Term, 577; 2 Taunt. 243.] In Givens v. Robbins, 5 Ala. Rep. 676, no question arose as to the waiver, and the general rule only is stated.

3. There is no evidence, either of an express or implied obligation on the plaintiffs to render services in the supreme court. The agreement speaks of services in Dallas chancery court, and no other. Their services, as the evidence shows, had there been rendered; there was therefore no evidence on which to predicate the charge asked for. ·

4. The object of the agreement was to provide for payment out of the particular fund, and the charge of cham-

perty is refuted by the agreement itself, as well as the other evidence.

GOLDTHWAITE, J.—1. We are not advised by the judgment entry, that any judgment was rendered upon demurrer. The fact that a demurrer is found in the transcript, or referred to in memoranda of the parties, will not authorize us to revise a judgment, which does not exist. The inference, from the condition of the record is, that the demurrer, if not informally disposed of, was waived. It is immaterial therefore to inquire, whether the special count is good or bad, as a recovery might be had on the other counts.

2. It is not necessary now to determine whether the suit was properly discontinued against Bowie, the co-defendant, as we are clear no advantage can be claimed by Walker, even if improperly discontinued, after his appearance and defence of the suit. It is true, in some cases, this court has considered the discontinuance under such circumstances, as vitiating the judgment subsequently obtained against the other defendants; [Adkins v. Allen, 1 Stew. 130; Givens v. Robbins, 5 Ala. Rep. 676, but in these, the effect of the subsequent appearance, without objection, seems not to have been considered. The rule recognized by all the authorities is, that the advantage of the irregularity must be claimed at the earliest period, [6 Com. Dig. W. 6, 274,] and any subsequent proceedings by the party will be considered as a waiver. [Hair v. Moody, 9 Ala. Rep. 399.]

3. We are unable to see on what grounds this agreement can be assailed as champertous, as it seems to be a provision for services rendered in the particular suit out of which the payment is to be subsequently made. There is no pretence to say this is a bargain to have a portion of the sum of money to be afterwards recovered. But it may perhaps be doubted, whether even an agreement to receive compensation out of money or property actually belonging to the suitor, can be considered champerty at the present day.

4. We entirely agree with the circuit court in the construction put by it on this agreement. It is of that class of cases which is subject to explanation, inasmuch as it requires the aid of extrinsic proof to ascertain what facts existed when

the agreement was made, and without the aid of these facts it is impossible to say, whether the services were to be, or had been rendered. It is entirely evident, if an agreement of this sort is made with respect to a suit just commenced, the construction would be, that the promisees should prosecute it to some final result, but when made with regard to a suit just determined, we think the only proper construction is, that the promise and agreement refer exclusively to services already rendered. In this view, it is the promise to pay out of the particular fund created by the suit, and it would be manifestly unjust to permit the parties to defeat the right to compensation by a release, or compromise. The promise is to pay out of the monies to be collected *in the case*, yet we cannot suppose the claim could be shut out, because the money was paid without the coercion of process. We think it was properly left to the jury to determine whether the fund received was the same as that out of which the payment was to be made.

The case of Higginson v. Gray, 8 Mass. 385, which is supposed to bear so strong an analogy to this, does not, in our judgment, materially bear on the questions involved. There one underwriter agreed to be bound by the final decison made in another suit, in which the party receiving the stipulation was the plaintiff. The suit was successfully prosecuted, but was compromised pending a commission of review, which is equivalent to an appeal from one jury to another. The decision was, that this compromise did not bind the other underwriter. And the reason given, and entirely evident, is, this was not the determination in contemplation of the parties. In the case before us, the intention of the parties, to be collected from the agreement is, that the plaintiffs shall be paid whenever the promisors receive the fund, or property covered by the suit in which the services were rendered.

5. What we have already said, will enable us to decide the point upon the charge refused somewhat more briefly. The agreement of the parties being rendered definite and certain by ascertaining that *professional services in said cause* were services already rendered, it is entirely clear the parties contemplated nothing further, as the condition on which the money was to be paid, and in this view the refusal of the

plaintiffs to attend the case in the supreme court, could not affect their right to recover the entire sum stipulated.

Upon the whole, we are satisfied there is no error available to the defendant.

Judgment affirmed.