# Ware's Adm'r *v.* Russell.

*Bill in Equity by Attorneys, as Assignees of Defendant, for Injunction against Fraudulent Compromise with Plaintiff, in Pending Action at Law.*

1. *Assignment of property attached.*—The levy of an attachment on personal property does not divest the right and title of the defendant in the process, nor prevent him from making a valid assignment of the property, subject to the lien of the attachment as determined by the final result of the case.

2. *Contracts between attorney and client.*—All contracts between an attorney and his client, made after the formation of that relation between them, relating to the compensation of the attorney, or by which the client transfers to him an interest in the subject-matter of the suit, or in property involved in the litigation, are closely watched and jealously scrutinized by the courts, when their validity is drawn in question between the parties themselves, and are only sustained when, on a consideration of all the circumstances attending them, they appear to be fair, just, and untainted with an abuse of the relation ; but such a contract is only voidable at the instance of the client, and a stranger can not be heard to assail its validity.

3. *Champerty and maintenance ; contract not obnoxious to.*—A contract by which a defendant in attachment transfers and assigns to his attorneys the personal property attached, in consideration of professional services rendered and to be rendered in defense of the suit, and in the prosecution of a contemplated action to recover damages for the wrongful and vexatious suing out of the attachment, stipulating for his own diligence in the defense of the suit and the removal of the attachment lien, and giving the attorneys the entire control and management of the suit, is not tainted with champerty or maintenance.

4. *Acts and admissions of assignor, subsequent to assignment*—A defendant in attachment having transferred and assigned the attached property, subject to the lien of the attachment, by a valid contract, he can not, by any subsequent acts or admissions, bind the assignee, nor impair the rights conferred by the assignment; and while he may consent to a personal judgment against himself in the attachment suit, he can not consent to a judgment which will bind the attached property, nor waive defects and irregularities in the proceedings which would defeat the attachment.

5. *Equitable relief in pending action at law, moulding judgment between parties.*—When a simple, unqualified judgment for either party, in a pending action at law, will not do complete justice—when modifications or adjustments are necessary to fix, control and equalize the rights of the parties, and to protect the rights of third persons acquired in good faith pending the litigation, a court of equity will intervene, adjusting the whole controversy, and moulding its decree so as to preserve the rights of all the parties.

6. *Extent of relief in equity.*—It is a very general principle in a court of equity, that when it has acquired jurisdiction of the primary objects and purposes of a suit, because of the inadequacy of legal remedies, it will settle the litigation, and do complete justice between the parties, without remitting them again to the court of law; and in so doing, the

[Ware's Administrator v. Russell.]

court follows the law, deciding legal questions as they would be decided at law.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 25th April, 1876, by James M. Russell and George W. Hooper, against Henry Ware and John T. Humber; and sought relief on the following state of facts, as alleged in the bill, and shown by the exhibits thereto: · On the 22d October, 1873, said Ware sued out an attachment against said Humber, claiming $700 as due for advances made by him to enable‹ Humber to make a crop during that year on a tract of land which he was cultivating in said county of Russell; and said attachment was levied, on the same day, on 16,200 pounds of seed-cotton, 500 bushels of cotton-seed, and 175 bushels corn.    The attachment was returnable to the Criminal Court of said county, and on the abolition of that court, a few weeks afterwards, the cause was transferred into the Circuit Court, where it was still pending when the bill was filed.    On the 7th November, 1873, said Humber sold and transferred to the complainants, who are and then were attorneys at law, the property on which the attachment had been levied, with other cotton, and other kinds of personal property; and executed to them a bill of sale, or written assignment, which was made an exhibit to the bill, in these words:    " For value received, I hereby transfer, sell and assign, to James M. Russell and George W. Hooper, four bales of rent cotton on Gatewood place, more or less; also, cotton due by S. R. Pitts, for rent this year, four bales, more or less; also, all the cotton in the gin-house on the farm cultivated by me this present year, and on which I now reside, and unpicked in the field, supposed to be about six bales, it being all the cotton ·unattached; also, 16,200 pounds of seed-cotton, attached by Ware in gin-house, and in the custody of the sheriff; also, 175 bushels of corn in the crib on land rented to Sam. Pitts; also, 175 bushels of corn in negro house, attached by Ware, in custody of sheriff," &c.    In reference to this sale, or assignment, the bill contained the following allegations:    " Said sale was fair and *bona fide*, and was, for a good and valuable consideration, to-wit: said Humber was indebted to your orators in the sum of more than $1,500, for professional services as attorneys before that rendered by them to and for said Humber at his request, and for professional services as attorneys which they then and there contracted thereafter to perform for him; and your orators also agreed to execute and sign with said Humber, as his sureties, a replevy bond for the said property which had been levied on by said attachment.    The consideration aforesaid was paid and executed in full by your orators, and they performed all the services they

contracted to perform for said Humber up to the present time, and are still performing said services; and they signed and executed the replevy bond, as they had agreed to do, as security for said Humber. At the time of the sale of said property to your orators, said Humber assured them, and induced them to believe, that he was not indebted to said Ware in any manner whatever,.and that said Ware, on the contrary, was indebted to him in a large sum, for which he had sued said Ware in the Circuit Court of Russell county. Upon making said sale, said Humber agreed with your orators to defend against said suit, and to prevent said Ware from obtaining any judgment against him, to which said Ware was not legally entitled; and employed your orators to defend said cause for him as his attorneys, and agreed not to interfere with the management of said case, and that your orators should and might so manage the defense to said case as to defeat the case, if it could be legally done; and your orators thereupon proceeded to defend said case for said Humber, by filing for him a plea in abatement thereto;" a copy of which was made an exhibit to the bill, and which was founded on alleged defects in the affidavit for the attachment. "The sale to your orators as aforesaid, and the consideration thereof, and all the agreement between said Humber and your orators, was well known to said Ware immediately after the making of said sale."

The cotton, corn and cotton-seed attached, which were so replevied, were on Humber's plantation, about nine miles distant from the town of Seale, where the bond was executed; and when the sheriff sent to the county for it, only a portion of it was found, and delivered to the complainants as the assignees of Humber. On the 22d December, 1873, by agreement between Ware and Hooper, the latter acting also for Russell and Humber, it was consented that nine bales of cotton, which the sheriff had delivered to Hooper and Russell under the replevy bond, should be sold, and the proceeds of sale deposited in a savings-bank in Columbus, Georgia, one-half to the credit of Hooper, and the other half to the credit of Ware, to await the result of the attachment suit. This agreement was reduced to writing, and was made an exhibit to the bill; and the nine bales of cotton were accordingly sold, and the proceeds of sale deposited as stipulated.

On the 17th July, 1875, by agreement between Ware and Humber, without the knowledge of the complainants, and in fraud of their rights, as the bill alleged, they made a settlement and compromise of the matters in litigation between them; and Humber signed and delivered to Ware a writing under seal, attested by two witnesses, a copy of which was made an exhibit to the bill, in these words: "Know all men by these presents,

[Ware's Administrator v. Russell.]

that I, John T. Humber, being desirous of compromising and settling all suits and matters in controversy between myself and Henry Ware, and for and in consideration of my present indebtedness to said Ware, and the further sum of one hundred dollars to me in hand paid by the said Ware, the receipt whereof I do hereby acknowledge, have this day bargained and sold to the said Ware all of my right, title and interest in all property of every kind embraced in the sheriff's returns of the levies of two writs of attachment"—viz., Ware's suit above described, and another attachment in favor of J. R. Vann, both pending in said Circuit Court; "to have and to hold to him, the said Henry Ware, his heirs and assigns forever. And for the consideration above expressed, I further agree to dismiss, at my costs, all suits now pending in my name against the said Ware, either against him alone, or in connection with others, and all other parties to said suits as defendants. I further agree that said Henry Ware may take judgment against me for the sum claimed in his said attachment suit against me, for the principal and interest mentioned therein, with interest to the date of judgment, And I do hereby nominate and appoint Benjamin Jennings as my true and lawful attorney, for me and in my name to act in said matter, and to acknowledge judgment against me, in favor of said Ware, for the sum claimed in said attachment suit, with interest, at the next term of the Circuit Court of Russell county, as fully as if I were then and there present and acting for myself. I further hereby transfer to the said Ware all my right, title and interest in the sum of money, the proceeds of the sale of *eleven* bales of cotton placed by said Ware and my attorneys in said suit above mentioned in the savings-bank of the Eagle and Phœnix Manufacturing Company, of Columbus, Georgia, to await the decision of said suit; and I hereafter authorize the said Henry Ware to take the said sum of money into his possession, and relinquish to him all claim or right thereto. Also, I further relinquish all right, claim or title, to the four bales of cotton held by Samuel R. Pitts, and due me from them for rent of a portion of the Vann lands in the year 1873, and authorize the said Pitts to deliver the same, or the proceeds thereof, to the said Ware. In witness whereof," &c.

The bill alleged that this instrument was procured from Humber by Ware for the purpose of defrauding the complainants of the rights which they had acquired by the sale and assignment from Humber, and obtaining a judgment against them as sureties on the replevy bond; that Ware attempted to use it, at the next term of the Circuit Court, to procure a judgment in the attachment suit; that no debt was in fact due from Humber to Ware, and the attachment was issued without au-

12

thority of law; and that Humber had absconded, with the $100 paid him by Ware, leaving no property which could be reached by law. The bill prayed that the instrument executed by Humber to Ware might be declared void and inoperative as against the complainants, and might be set aside and cancelled; that proceedings in the attachment suit, as between Ware and Humber, might be enjoined, and the complainants be allowed to defend that suit, or that the court would hear and determine the matters involved in that suit; that the complainants might be relieved from liability on the replevy bond, to such an extent as might be just and equitable; and for other and further relief, under the general prayer.

A decree *pro confesso* was entered against Humber, on publication against him as a non-resident; and his deposition was not taken by either party. Ware filed a demurrer to the bill for want of equity, on the ground that the assignment to the complainants, shown by the exhibit to the bill, was void for champerty and maintenance; and his demurrer having been overruled, he set up the same matter by way of plea and answer. He denied the charges of fraud, and asserted that, in making the compromise with Humber, he acted in good faith, and sought only to buy his peace and be rid of vexatious litigation, in which, if he were successful, he could make but little, if anything, as Humber had already removed from Alabama, leaving no property here.

On final hearing, on pleadings and proof, the chancellor held that the complainants were entitled to relief, and rendered a decree declaring void and inoperative, as against them, the instrument executed by Humber to Ware, and ordering it to be delivered up for cancellation, or otherwise disposed of as the court might order; enjoining Ware from attempting to use said instrument in the suits at law; allowing Humber to defend the attachment suit, and the complainants to defend it as his attorneys, under the rules of practice in the Circuit Court, as if said instrument had never been executed.

Ware having died after the rendition of this decree, his administratrix was made a party defendant, on her own motion; and she sues out the appeal, and here assigns as error the overruling of the demurrer to the bill, and each part of the final decree.

L. W. MARTIN, and WATTS & SONS, for appellant.

HOOPER & RUSSELL, *contra*. (No briefs on file.)

BRICKELL, C. J.—The right and title to personal property is not changed by the levy of any attachment, or of an execu-

tion.   The general property continues in the defendant, and he
may alienate it, subject only to the lien of the process.   The
lien is not a right of property—it is not a *jus in re*, nor a *jus
ad rem*.   It is a simple preference, or priority, created by law,
to subject the property, by sale, to the satisfaction of the exe-
cution, or other process issuing on the judgment in the attach-
ment suit, if the plaintiff succeeds in recovering judgment.
The transfer or assignment to the appellees is not affected in
validity, merely because the subject of it is personal property
on which an attachment had been levied.   The title passed,
subject to the lien of the attachment; and that lien could be
removed by the satisfaction of the judgment which may be ob-
tained against the assignor, and would be defeated if the at-
tachment suit did not ripen into a judgment in favor of the at-
taching creditor.—*Denny v. Willard*, 11 Pick. 519; *Arnold
v. Brown*, 24 *Ib.* 89; *Atwood v. Pierson*, 9 Ala. 656.

All contracts between attorney and client, made after the
formation of the relation, touching the compensation of the at-
torney, or by which the client transfers to him an interest in
the matter of suit, or a right or interest in and to property in-
volved in litigation, are closely watched, and jealously scruti-
nized, when, as between them, their validity is drawn in ques-
tion.   The confidence the relation involves—the power over
the client the attorney naturally acquires, the opportunity and
danger of oppression and the exercise of influence, compel
courts to a most jealous supervision of all such contracts; and
as between attorney and client, they are supported only when
all the circumstances attending them import that they are fair,
just, and untainted with an abuse of the relation.   The in-
firmity of the contract in this respect renders it only voidable
at the election of the client.   If he acquiesces, strangers to the
contract have no right or cause to complain.   If the assignment
could be regarded as a contract of this character, the client has
made no complaint of it, and it must be treated in this contro-
versy as if it had been made between parties not sustaining any
relation of confidence.   If, however, the assignment is cham-
pertous, or if founded on the consideration of maintaining or
defending suits at law, it is void, and no court will lend its aid
to its enforcement.   Champerty, with us, is the unlawful main-
tenance of a suit, in consideration of some bargain to have a
part of the thing in dispute, or some profit out of it; and covers
all transactions and contracts, whether by counsel or others, to
have the whole or part of the thing or damages recovered.
*Poe v. Davis*, 29 Ala. 683; *Holloway v. Lowe*, 7 Port. 488.
The corrupting element of the contract is its tendency to fo-
ment or protract litigation, its dependency for its value upon
the termination of suits, and its introduction, to control and

manage them, of parties without other right or interest than such as is derived from the contract. It is not enough to condemn a contract, that its subject-matter is property or a right or interest involved in litigation, or which, to be reduced to possession, or made capable of beneficial enjoyment, necessitates litigation. Property or rights involved in litigation, or resting wholly in action, are not incapable of transfer or assignment; nor are attorneys inhibited from acquiring them, by a fair contract of purchase. If the contract does not savor of maintenance—if it is free from champerty—if it is not in its essence a mere agreement to maintain a suit, or to share its profits, and it is otherwise fair, and supported by a valuable consideration, it will be enforced.—2 Story's Eq. § 1050.

The assignment to the appellees is, in terms, absolute and unconditional, passing to them immediately the general ownership of the property. Whatever may be the event of the suit in which the property had been levied on, the title to the property would remain in them, subject only to the lien of the attachment. There was no undertaking or promise that they would indemnify the assignor against the judgment in that suit, or would defend it at their own costs and expenses; or that they would intervene in it otherwise than as the attorneys of the assignor. On the contrary, the assignor stipulated for his own diligence in the defense of the suit, that the lien of the attachment should be removed as an incumbrance on the property, and to relieve himself, doubtless, from the liability to the appellees in which he would be involved because of the failure of the title, if the lien of the attachment prevailed. The consideration of the assignment was not fees or compensation payable only, or to be incurred, in the event of success in defending the attachment suit, or in the prosecution of the contemplated suit for the wrongful or malicious suing out of the attachment. The assignment is founded on the consideration of a precedent debt, and retaining fees to defend the one suit and prosecute the other. The relation existing between the parties, that of attorney and client, requires a more vigorous examination of the contract, and of all the attending facts, than it would be subjected to, if the parties did not stand in a relation affording like opportunity and temptation to champerty and maintenance; and unexplained circumstances of suspicion would lead to conclusions unfavorable to the validity of the contract. But, when the contract is shown to be free from all condition—when it does not involve the duty of commencing or continuing litigation, and it is supported by a fair and valuable consideration—debts payable at all events, though the consideration of such debts may be compensation for professional services rendered, or which the attorney is retained to render,

the contract can not be condemned as champertous, or as savor-
ing of maintenance.—*Thukelheimer v. Brinckerhoff*, 16 Amer.
Decisions, 307, and note; *Moody v. Harper*, 38 Miss. 599.

The assignment passed to the assignees the general property
in the things upon which the attachment was levied. It placed
the assignees in the exact position of the assignor as to these
things, and divested him of all capacity by any subsequent
transaction, by negotiation with Ware, or otherwise, to change
that position to their injury. While the assignor could trans-
fer no higher or greater right than he possessed, of that right he
could fully divest himself; and having divested himself of the
right, his acts, admissions or contracts, whatever may be their
operation as against himself, are without force as against his
assignees. The measure of right to which Ware was entitled,
and the measure of right the law preserves from impairment,
was the lien of the attachment, in the state and condition of the
lien at the time of the assignment. In its very nature, the lien
is inchoate, conditional, dependent on the rendition of judg-
ment in the attachment suit, upon which process could right-
fully issue for the subjection of the property attached, not
merely upon the rendition of judgment binding Humber
personally. While the assignment substituted the assignees to
the title of Humber in its condition at the time it was made,
and subject to the burdens then resting upon the property; and
while the law is solicitous to preserve the rights then existing,
Ware had acquired by the lien of the attachment; there is equal
solicitude to preserve the rights of the assignees exactly as these
rights were acquired, free from impairment or disappointment
by any act of the assignor, who, not having an interest in the
property, ought not to have capacity to bind it, directly or in-
directly. If it be true, that the attachment levied on the prop-
erty was irregular—if it were subject to abatement, because of
defects apparent on the face of the proceedings; or if it be true
that there was not a debt due or owing from Humber to Ware,
which could form the basis of a proceeding by attachment;
Humber, after the assignment, was incapable of waiving the
irregularity, or of voluntary submission to the rendition of
judgment, so that the burden resting upon the property would
be increased. Power to waive the irregularity, to confess judg-
ment as if he had been regularly brought into court, to with-
draw all defense, binding himself personally, resided in him, and
he was free to exercise it, either with or without any new con-
sideration moving to him. If his power extended further—if,
by a mere agreement with Ware, he could fix a liability on the
property, or could remove the obstacles to the conversion of
the inchoate lien of the attachment, into a more certain charge
upon the property; if he could waive irregularities which must

result in the defeat of the lien ultimately, he would retain power to disappoint and nullify the assignment.

The contract between Humber and Ware is valid as between themselves. By it Humber is bound, and he does not seek its repudiation. Notwithstanding the assignment, he could submit to a personal judgment in the attachment suit; and his power to control the suits he had instituted, to abandon or continue the prosecution of them, was unrestrained. The use of the contract, to this extent, was not unjust to the appellees. The use of it for the purpose of obtaining a judgment in the attachment suit which would bind the property, and subject it to a burden different from that resting upon it at the time of the assignment, is inequitable. Long before this contract, Ware had notice of the assignment—notice that Humber had parted with all interest in the property; and good faith required him to abstain from all dealings with Humber on the basis of continuing ownership in him. The preservation of his rights in the condition in which they were at the time of the assignment, is the measure of justice to which Ware is entitled, and to the same measure the appellees are entitled.

In the court of law, a general and unqualified judgment only could be rendered. The court was without power to mould and adapt its judgment to the particular circumstances of the case, meting out exact justice to all parties in interest. A general judgment for Ware in the attachment suit, upon which a *venditioni exponas*, or other process, could issue for the sale of the attached property, if it were rendered in pursuance of the contract between him and Humber, would be unjust to the appellees. A judgment binding Humber personally, and yet so limited as not to affect the right and title of the appellees to the property attached, if it should be ascertained the attachment was irregular, or that there was really no debt due from Humber to Ware, is the appropriate relief under all the circumstances. When a simple, unqualified judgment for either party will not do complete justice — when modifications or adjustments are necessary to fix, control and equalize the rights of the several parties, the remedy at law is inadequate, and a court of equity will intervene, adjusting the whole controversy so that complete justice may be done. —1 Story's Eq. §§ 26–30.

The decree of the chancellor seems to be erroneous, in several respects. First, in directing the cancellation of the contract between Humber and Ware. As between them, the contract is valid, and should be allowed full operation. Second, in enjoining Ware from the use of it to procure the dismissal of the suits instituted by Humber, to which it refers. Third, in the prohibition of its use to obtain in the attachment suit a

[Hill's Administrator v. Huckabee's Administrator.]

judgment binding Humber personally. Fourth, in view of the particular circumstances of the case, and that the jurisdiction of the court had attached because of the inadequacy of remedies at law, in not proceeding to a final determination of the controversy, though it may involve in some particulars mere legal questions. It is a very general principle in a court of equity, that if it has jurisdiction of the primary objects and purposes of a suit, because of the inadequacy of remedies at law, it will settle litigation, and do complete justice between the parties, without remitting them again to the jurisdiction of courts of law.—1 Brick. Dig. 639, § 5. If the pleas in abatement of the attachment interposed by Humber, before entering into the contract with Ware, are not well taken,—a question the chancellor must decide, as he is required to decide other mere legal questions arising in the course and progress of proceedings before him, and as to which he must follow the law,— there should be a reference to the register, to ascertain, from other evidence than that which may be derived from the contract between Humber and Ware, the existence and amount of the debt on which the attachment issued; and for the amount, when ascertained, a decree should be rendered (and for the costs in the attachment suit in the court of law), and charged upon the property on which the attachment was levied. If that decree is not satisfied, then the liability as sureties on the replevin bond should be adjusted and enforced; the adjustment to be made in view of the fact that, as to the cotton which was sold with the consent of Ware, there is no liability on the bond.

Let the decree of the chancellor be reversed, and the cause remanded, for further proceedings, in conformity with this opinion.