# Price, Ex'rx, *v.* Carney.

*Bill in Equity by Attorneys to enforce Trust in Funds in Hands of Sheriff, created by Contract with Clients, and to cancel Releases obtained from Clients by Sureties on Official Bond of Sheriff.*

1. *Champerty; when contract between attorneys and clients not tainted with.*—A contract between parties to two litigated attachment suits and their attorneys is not champertous, which, settling and adjusting all matters of controversy between the parties to the suits, provides that judgments should be rendered for one-half of the proceeds of property which had been levied on and sold under the attachments, and then in the hands of the sheriff; that designated parts of the fund, when collected, should be paid to the plaintiffs, and the balance divided, in stated proportion, between the attorneys of the parties, plaintiff and defendant, as compensation to them for services rendered in the suits and in other controversies between the parties, and to be rendered in the prosecution of suits for the recovery of the fund from the sheriff, or his sureties; and that one of the attorneys should have the control of the judgments, and of the fund to be realized from the sheriff, or his sureties, until the agreement has been fully executed.

2. *When authority of attorney to execute contract for client can not be questioned by stranger.*—The attorneys for the defendants having executed such contract for and on behalf of their clients, if there was a want of authority in the attorneys to execute the contract, the clients alone can avoid it; and if they acquiesce, the sureties of the sheriff, when sued for the fund, can not complain.

3. *Contract by infant; when he can not repudiate.*—If a party, after attaining his majority, accepts the benefits of a contract executed by him during his infancy, he can not afterwards repudiate its burdens.

4. *Attorney and client; notice to attorney notice to client.*—Notice to an attorney, while in the employment and service of his client, of facts connected with the business in which he is engaged, operates as notice to the client.

5. *Extent of remedy by court of equity, when jurisdiction once acquired.* When a court of equity has acquired jurisdiction of the primary purposes and objects of a suit, it will settle the litigation, although it may involve the adjudication of mere legal questions, without remitting the parties to a court of law for the adjustment of legal rights which are consequential or incidental.

APPEAL from Mobile Chancery Court.

Heard before Hon. JOHN A. FOSTER.

This was a bill in equity by Thomas H. Price, as surviving partner of Gibbons & Price, a late partnership engaged in the practice of the law, and D. C. Anderson and James Bond, partners practicing law under the firm name of Anderson & Bond, against James A. Carney, Elijah S. Taylor, John B. Bryars and Wiley Bryars; and was filed on 28th December,

1881. As appears from the record, on and prior to 25th April, 1879, there were pending and undetermined in the circuit court of Baldwin county two attachment suits against James Hadley and others, seeking the recovery of damages resulting from assaults and batteries, one by John B. Bryars, and the other by Wiley Bryars; and in these suits, which had been pending for several years, and were much litigated, Gibbons & Price represented, as attorneys, the plaintiffs, and Anderson & Bond represented, in like capacity, the defendants. Prior to that time, criminal prosecutions, commenced by indictment, had been begun and concluded in said court against the defendants in the attachment suit, James Hadley and others; and in these prosecutions Gibbons & Price, under employment by John B. and Wiley Bryars, who were prosecutors, had aided the State's solicitor, and the defense was conducted by Anderson & Bond. There also existed at said time claims in favor of the defendants in the attachment suits, James Hadley and others, against the Bryars and their sureties on the attachment bonds, for damages for the alleged wrongful and vexatious suing out of the attachments; and in reference to these claims the parties were represented respectively by the same attorneys. Under the attachments a considerable amount of property belonging to the defendants therein had been seized and sold by one Chandler, as sheriff of Baldwin county, realizing $2837.72, and a smaller amount by the sheriff of Escambia county, under branch writs, realizing about $300 net; which sums, on 25th April, 1879, were held by said officers respectively, subject to the final disposition of the attachments. The several parties to said suits and controversies were unable to pay their attorneys for their services therein, otherwise than out of the fruits or avails of the suits, they being insolvent.

On 25th April, 1879, after several years of litigation, the parties to said suits came to an agreement and settlement of the several matters of litigation and controversy above mentioned, which was reduced to writing and signed by John B. and Wiley Bryars, Anderson & Bond "on behalf of James Hadley and others, parties to said suits," Gibbons & Price, " attorneys for J. B. and Wiley Bryars," and by T. H. Price and Anderson & Bond, individually. This agreement, after reciting the above matters of suit and dispute, and in settlement thereof, provides: "That in the two suits now standing on the docket in favor of said John B. and Wiley Bryars, judgments shall be rendered for one-half of the proceeds of property sold by the sheriff of Baldwin, and the sheriff of Escambia counties; but said judgments shall not be used against the said defendants, Hadley and others, for any other purpose than as a basis to collect the amount in the hands of said

sheriffs from the said sheriffs, or their sureties; and this agreement is, in all other respects, a mutual release between the parties to said suits, each to the other, of all claims and demands, of whatsoever sort or kind." Then, after reciting the services rendered by said attorneys for their respective clients in said suits, and an agreement on their part "to prosecute suits for the recovery of said funds from said sheriffs, or their sureties," said agreement proceeds: "Therefore, for compensation to said attorneys for their said services, rendered and to be rendered, it is agreed that Gibbons & Price shall retain two-thirds of the sum of money, when collected, that is due by the sheriff of Escambia county, and give to Anderson & Bond one-third thereof; and the amount recovered from the sheriff of Baldwin county, or his sureties, shall be divided as follows: John B. Bryars, five hundred dollars, and to W. J. Bryars five hundred dollars; and of the remainder, two-thirds to Gibbons & Price, and one-third to Anderson & Bond; and said judgments in favor of said John Bryars and W. J. Bryars are then to be satisfied on the record. It is further stipulated and agreed that Thomas H. Price, of Gibbons & Price, shall have the control of said judgments, and of the funds to be realized from said sheriffs, or their sureties, until this agreement be fully completed and ended."

If the proof does not show an authority on the part of Anderson & Bond to execute this agreement on behalf of their clients, the defendants in said attachments, Hadley and others, it does show that the latter desired a compromise and settlement of the several matters of controversy, for the purpose, mainly at least, of obtaining compensation for their attorneys; and that they were advised of the agreement and its provisions, and had acquiesced therein. It is also shown that the compensation provided for the attorneys by the agreement was inadequate

In pursuance of the agreement, judgments were rendered in the attachment suits in favor of the plaintiffs, and orders obtained, condemning the funds realized from the sales of the property levied on, to the satisfaction of said judgments "equally and *pro rata.*" Chandler, the sheriff of Baldwin county, having died insolvent, without accounting for the funds which had come to his hands, the complainants demanded payment from the defendants, James A. Carney and Elijah S. Taylor, who were Chandler's sureties on his official bond as sheriff; and failing to obtain payment, they instituted suits in said circuit court against said defendants on said bond, in favor and in the names of John B. and Wiley Bryars, severally, to recover said funds. While these suits were pending, Carney and Taylor, without notice to the complainants, obtained from

John B. and Wiley Bryars, for the sum of $300 paid to each of them, written releases, discharging and releasing Carney and Taylor from all further liability as sureties on said bond, and growing out of the matters involved in said suits; and thereafter they pleaded said releases in the said circuit court in bar of the said suits brought against them by complainants. The bill charges, and the evidence introduced on behalf of complainants tended to show, that Carney and Taylor, at the time of the execution of said release, had notice through their attorney of said agreement, hereinabove set out, and of the complainants' rights and interest thereunder; but this is denied in the answers, and some evidence was introduced by said defendants in support of such denial.

The prayer of the bill is, that Carney and Taylor be required to deliver up said releases, and that the same be declared null and void, and be cancelled; or that "they may be limited by decree of this court to the interest in said funds which said John B. Bryars and Wiley Bryars have therein, namely, five hundred dollars each;" that the said defendants be perpetually enjoined from pleading said releases in bar of the said suits at law; "or that your Honor will take jurisdiction of the whole claim of your orators under said agreement, and order the said Carney and Taylor, after the amount due them shall have been ascertained in this court, to pay the same into this court, or that decrees may be made in favor of your orators for their respective shares under said agreement against the said defendants, Carney and Taylor, and that your orators may have executions thereon respectively for the collection of the same;" and for general relief.

The defendants answered the bill, and incorporated in their answers demurrers and pleas. The principal points made by these several pleadings in defense of the bill are, (1) that said agreement is champertous and void; (2) that Carney and Taylor, at the time of the execution of said releases, had no notice of the execution or existence of said agreement; and (3) that Anderson & Bond had no authority to execute said agreement for their clients, the defendants in the attachment suits, Hadley and others, and it was, therefore, not binding on them, or on the Bryars. The infancy of Wiley Bryars, at the time of the execution of said agreement, is set up by him; and (4) by the demurrers it is also insisted that complainants had a plain and adequate remedy at law.

On the hearing, had on pleadings and proof, and on the demurrers to the bill, the chancellor, being of opinion that the complainants were not entitled to relief, caused a decree to be entered, dismissing the bill; and that decree is here assigned as error. Thomas H. Price having departed this life, his execu-

trix, Mrs. Martha A. Price, joined in the prosecution of this appeal.

ANDERSON & BOND and P. & T. HAMILTON, for appellants. (1) Champerty is defined to be a bargain with plaintiff or defendant to divide the land or other matter sued for between the contracting parties, if they prevail at law, the champertor undertaking to carry on the suit at his own expense.—1 Bou. Law. Dic. 218 ; *Holloway v. Lowe,* 7 Port. 488; *Poe v. Davis,* 29 Ala. 676. It is one of the essentials of champerty, that the party shall interfere in suits in the results of which he has no interest.—*Thompson v. Marshall,* 36 Ala. 512 ; 11 Mees. & Wels. 682 ; 2 Story's Eq. Jur. § 1048*a;* 64 Ala. 66. When the agreement was made, the fund had not been condemned, the suits had not been finally tried, and both parties were interested in the fund.—*Scarborough v. Malone,* 67 Ala. 570 ; Drake on Att. (5th Ed.) § 426 ; *Blake v. Shaw,* 7 Mass. 505. Anderson & Bond became interested in the fund ; and it was not unlawful for them to agree to assist in its recovery. *Thompson v. Marshall,* 36 Ala. 512 ; *Vaughan v. Marable,* 64 Ala. 66 ; *McCall v. Capehart,* 20 Ala. 526. The chief object and purpose of the agreement was to settle the prior litigation between the Bryars and Hadleys. Securing the attorneys in their compensation was incidental and subsequent to the main purpose. If the suits had ended under a separate agreement, and then a subsequent agreement had been made, securing the attorneys their fees out of the fund, such an agreement would have been lawful.— *Walker v. Cuthbert,* 10 Ala. 213. Can it make any difference that the agreement to pay counsel is in the same agreement, but in a subsequent part of it ?—*Lytle v. State,* 17 Ark. 608. The very object and intent of the law of champerty is to prevent interference and maintenance of *pending* lawsuits and controversies, It is something which is *uncertain* and *unsettled,* and so giving rise to *speculation* in lawsuits and controversies. The attorneys in such a case as this are " to be regarded as assignees of the judgment or decree."— *Warfield v. Campbell,* 38 Ala. 527 ; *Ex parte Lehman, Durr & Co.,* 59 Ala. 631 ; *McPherson v. Cox,* 6 Otto, 404 ; *Brown v. Bigley,* 3 Cooper Ch. 618; *Hunt v. McClanahan,* 1 Heisk. 503 ; *Pleasants v. Kortrecht,* 5 Heisk. 694; *In re Paschal,* 10 Wall. 483 ; 18 N. Y. 368. The fund, in the eye of the law, was in court ; and the court proceeded to condemn it to the satisfaction of the judgments. There was no element of uncertainty ; on the contrary, there was the highest evidence of a certain and fixed liability.—*Dunklin v. Wilson,* 64 Ala. 164; *Palmer v. Clarke,* 2 Dev. (Law) 354. The mere fact that a suit was or might be necessary to coerce payment from the sureties of the sheriff, is

not sufficient to taint the agreement with champerty or maintenance.—*Broughton v. Mitchell*, 64 Ala. 221; *Pleasants v. Kortrecht*, 5 Heisk. 694. (2) The ground of demurrer, that complainants had an adequate remedy at law, is not well taken. See 13 Ohio, 167 (42 Am. Dec. 194); 7 Mees. & Welsb. 86–7; B. & Ad. 96; 7 T. R. 659; 5 Bing. (N. C.) 688 (35 E. C. L. R. 271); 6 Mees. & W. 490·; 9 Port. 63; 2 Ala. 571; 1 Ala. 102; 8 Cow. 293; 1 Story's Eq. Jur. § 190; 2 *Ib.* §§ 903–4, 962, 1039, 1040, 1047, 1056–57a, 1250. (3) And when a court of equity takes jurisdiction, it will go on and settle the whole matter, without sending the parties back to a court of law.—1 Brick. Dig. p. 639, § 5; 2 Story's Eq. Jur. §§ 1057–57b, 1250; 29 Ala. 397; 31 Ala. 274. (4) The attorney of Carney and Taylor, who defended the suit against them, and who prepared the release and aided in consummating it, had notice of the existence of the agreement with complainants, and of its material provisions. The evidence discussed at length on this point. The attorney having notice, it operated as notice to his clients, Carney and Taylor.— *Wiley, Banks & Co. v. Knight*, 27 Ala. 336; *Fitzherbert v. Mather*, 1 T. R. 16; Paley on Agency, 199; *Willis v. Martin*, 4 T. R. 66; Whart. Agency, §§ 302, 177–8; Story's Agency, § 140; *Pepper v. George*, 51 Ala. 194; *Scarborough v. Malone*, 67 Ala. 570; *M. & O. R. R. Co. v. Thomas*, 42 Ala. 673.

JOHN GAMBLE, with whom was DAVID CLOPTON, *contra*. (1) The contract set up in the bill, when analyzed and stripped of all surplus averments and recitals, is a contract between the complainants, as attorneys, and the defendants Bryars, as clients, by which the complainants, as attorneys, for services rendered and to be rendered, were to receive a part of the thing in dispute, or some profit out of it; and it is clearly champertous and void.—*Holloway v. Lowe*, 7 Port. 488; *Byrd v. Odem*, 9 Ala. 755; *Dumas v. Smith*, 17 Ala. 305; *Wheeler v. Pounds*, 24 Ala. 472; *Poe v. Davis*, 29 Ala. 676; *Jenkins v. Bradford*, 59 Ala. 400; 1 Brick. Dig. p. 334, § 1; 7 Wait's Ac. & Def. pp. 73–5; *Ware v. Russell*, 70 Ala. 174. (2) A client certainly has authority to compromise a demand in litigation and represented by counsel, without consulting the latter. The defendants Carney and Taylor had no notice of the agreement with complainants, when the release was executed; and hence, the validity of the release can not be affected by such agreement. (3) The complainants have a full and adequate remedy at law, and the demurrers should have been sustained. This point discussed. (4) It is true, ordinarily, that a court of chancery, having once taken jurisdiction of the person and subject-matter, will settle the entire litigation,

though it may involve the enforcement of legal demands ; but this is true only when the court has jurisdiction of the primary purposes of the bill, and the right to relief in respect to them is shown, and the legal demand is consequent thereon.—*Pond v. Lockwood*, 8 Ala. 669 ; *Dickinson v. Bradford*, 59 Ala. 581. (5) The execution of the agreement by Anderson & Bond on the part of the Hadleys can not be upheld. They had no authority as attorneys in fact, and such authority did not result from the relation of attorney and client. They only had authority to diligently prosecute their clients' cause.—*Kirk v. Glover*, 5 Stew. & Port. 340 ; 1 Brick. Dig. p. 191, § 30 ; *Chapman v. Cowles*, 41 Ala. 103.

BRICKELL, C. J.—There are numerous objections to the admissibility of evidence, not considered by the chancellor, and a consideration of which was unnecessary in the view he felt constrained to take of the case. We do not find it necessary now to make them matter of special consideration, for the material facts, upon which the rights of the parties depend, are few, and are shown either by evidence which is uncontroverted, or by evidence free from all just objection.

The primary question is, whether the contract of April 25, 1879, is tainted with champerty. When fairly analyzed, the objects and purposes of the contract are not matter of doubt, or uncertainty. The first was the adjustment and quieting of litigation between the parties, the subject of several suits, in which the parties stood in the several relations of plaintiffs and defendants. The second was the payment to their respective attorneys of compensation earned in the prosecution or defense of the suits, and in the prosecution or defense of the indictments against the Hadleys and others, all growing out of the same unfortunate occurrence. The third was obtaining from the sheriffs of Baldwin and Escambia counties the moneys remaining in their hands, derived from the sales of personal property levied upon by the attachments. The fourth was the application of these moneys, when received, in the order, and for the purposes expressed in the contract. The legal effect and operation of the contract was a transfer to Price of the beneficial interest in the judgments in favor of John B. and Wiley Bryars, respectively, charged with the trust and duty of collecting the moneys in the hands of the sheriffs, and applying them, when collected, to the uses and purposes expressed in the contract, whereby the litigation would be finally quieted, and the attorneys of the parties compensated for the services they had rendered. The contract was executed by the rendition of judgment, and the dismissal of suits, in accordance with its terms. It is very certain that it was entered into and executed

[Price, Ex'rx, v. Carney.]

by all the parties intelligently, in good faith, and in the absence of all fraud, misrepresentation, or undue influence. And, so far as is shown by the evidence, the compensation secured to the attorneys for the services which they had rendered, is barely just and adequate. Champerty, as it may be defined in view of our past decisions, "is the unlawful maintenance of a suit in consideration of some bargain to have a part of the thing in dispute, or some profit out of it; and covers all transactions and contracts, whether by counsel or others, to have the whole or part of the thing or damages recovered."— *Ware v. Russell*, 70 Ala. 174. It is impossible to draw this contract within the influence of this definition, and it is equally impossible to impute to it the corrupting tendencies which vitiate champertous agreements. The quieting of litigation was the primary, controlling purpose of the parties—when the contract was executed, all opportunity and necessity for litigation were removed. Intending the execution of the contract, the parties dealt as if the thing was done, which they intended should be done. There was no more than the transfer and appropriation of judgments, which they regarded as rendered, to pay the compensation of their attorneys for services already rendered. The amount of the compensation was not dependent upon the commencement, or upon the continuance of litigation, and the profits it should yield. The transfer or assignment to counsel of specific parts of judgments which have been rendered, or to be rendered, is essentially different from a contract by which they are to have a part of the thing in dispute, for maintaining a suit for its recovery.— *Walker v. Cuthbert*, 10 Ala. 213.

In the language of Lord Abinger, in *Prosser v. Edwards*, 1 Y. & C. 484, quoted and adopted by this court in *Poe v. Davis*, 29 Ala. 676: "All our cases of maintenance and champerty are founded on the principle, that no encouragement shall be given to litigation, by the introduction of parties to enforce those rights, which others are not disposed to enforce." This sound and conservative doctrine is not contravened by the contract under consideration. As we have said, its controlling purpose was the silence of long protracted, and not the commencement or continuance of, litigation. When executed, further litigation was impossible, unless the sheriffs, holding the moneys they were bound to pay over on the rendition of the judgments, proved refractory or delinquent in the performance of official duty. There is no principle of law inhibiting parties, having a just claim to moneys in the hands of ministerial officers, from assigning or transferring such a claim. Property or rights involved in litigation, or resting wholly in action, are the subject-matter of assignment, and by fair contract may be acquired by attorneys, or by others, if it be not of the

essence of the contract that suits shall be maintained, and the consideration, a division of the profits.— *Ware v. Russell, supra*; 2 Story Eq. § 1050. We can not concur in the opinion of the chancellor, that there is a taint of champerty in this contract.

We may pass all that is urged as to the obligation of the contract upon the Hadleys. If there was a want of authority in their attorneys to make the contract, it may be, they could have avoided it. Avoidance rested in their discretion ; a discretion they alone could exercise ; if they acquiesce, strangers can not complain. We pass, also, all that is said in reference to the infancy of Wiley Bryars ; since his maturity, he has accepted the benefits, and he can not repudiate the burdens of the contract, if any it imposes.

The remaining question is, whether, when the releases were executed, Carney and Taylor had notice of the contract, and of the rights it conferred upon Price and upon Anderson & Bond. The releases were obtained and executed by and through the agency and instrumentality of the attorney of Carney and Taylor, employed to defend the suits pending against them ; he was present at their execution, and when the money was paid which forms their consideration. The rule of law is unquestioned, that notice to an attorney, while in the employment and service of his client, of facts connected with the business in which he is engaged, operates as notice to the client.— *Wiley v. Knight*, 27 Ala. 336 ; *Smyth v. Oliver*, 31 Ala. 39. A disputed fact is, whether notice to the attorney is shown, and a careful examination of the evidence satisfies us that the inquiry must be answered affirmatively, and is properly so answered, without impugning the credibility of any witness testifying in reference to it.

The release, though inoperative to affect the rights and equities of Price, and of Anderson & Bond, is valid and operative to extinguish the claims of the parties by whom it was executed. A court of equity, having jurisdiction to limit its operation, so as to preserve the rights of all parties, should settle finally the litigation, without remitting them to further controversy in the court of law. The doctrine of the court is, that if it has jurisdiction of the primary purposes and objects of a suit, it will, though it may involve the adjudication of mere legal questions, settle the litigation, without remitting the parties to a court of law, for the adjustment of legal rights, which are consequential or incidental.—1 Brick. Dig. 639, § 5.

The decree of the chancellor must be reversed, and a decree will be here rendered in conformity to this opinion.