## POE et al. *vs.* DAVIS et al.

[BILL IN EQUITY TO ENFORCE ASSIGNMENT OF DISTRIBUTEE'S INTEREST IN UNDIVIDED ESTATE.]

1. *Assignment pendente lite held champertous.*—A contract, by which a distributee, pending a protracted litigation respecting the validity of the decedent's will, assigns to a stranger, in consideration of $100 in hand paid, all his interest in the estate, which proves to be worth about $1,000 ; reciting in the assignment, that he is " becoming uneasy, and willing and desirous to sell his interest in said will and estate for a sum certain, to be released of all the trouble and expense of contesting said will,"—is champertous, and will not be enforced in equity.

APPEAL from the Chancery Court of Tuskaloosa.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Raza H. Poe and George Trawick, the appellants, against David Stanley and Sarah, his wife, and Willis Davis, the administrator of Nathaniel Davis, deceased ; seeking to enforce an assignment by said Stanley and wife of their distributive interest in the estate of said Nathaniel Davis, deceased, who was the father of Mrs. Stanley, and to enjoin the administrator from paying it over to them. It alleged, in substance, that said Nathaniel Davis died in December, 1846, or January, 1847, leaving as his heirs-at-law and distributees his widow and nine children; that in January, 1848, one James W. Roberts propounded for probate, in the orphans' court of Tuskaloosa, a paper purporting to be the last will and testament of said Davis ; that the probate of this instrument was contested by the heirs-at-law and distributees, and the case was twice carried to the supreme court, where it was reversed and remanded, as shown by the report in 13 Ala. 68, and 17 Ala. 55 ; that it was afterwards transferred to the circuit court, was again carried by writ of error to the supreme court, and was there affirmed at the January term, 1853, as shown by the report in 22 Ala. 490 ; that on the 15th March, 1848, while these proceedings were pending, said Stanley and wife, " in con-

sideration of one hundred dollars to them in hand paid by said plaintiffs, and of said plaintiffs' promise and undertaking to indemnify them from the costs and expenses to which they might be liable by reason of said contest, sold, transferred, and assigned to said plaintiffs, by an instrument in writing under their hands and seals, all their right, title, interest and claim in and to the estate of said decedent, and then and there delivered said assignment to plaintiffs." It was further alleged, that in July, 1853, a decree was finally rendered, rejecting the probate of said pretended will ; that in December, 1853, on a partial settlement of the estate, the sum of $831 70-100 was decreed to Stanley and wife, as a part of Mrs. Stanley's distributive share of the estate ; and that the administrator, though notified that plaintiffs had purchased their interest in the estate, paid said sum to them, as he pretends, and took their receipt for it. The prayer of the bill is, that the assignment may be declared valid and obligatory, and may be specifically executed ; that plaintiffs may be decreed entitled to receive the distributive share of Stanley and wife, and that the administrator may be enjoined from paying or delivering it to said Stanley and wife.

The defendants filed a joint answer ; demurring to the bill for want of equity, on the ground that the assignment, as stated in the bill, was champertous, and contrary to public policy ; and insisting on the same defense by way of plea and answer. Stanley and wife " deny that, by said contract, there was any indemnity on the part of complainants against the liability of respondents for the costs arising from the contest of said will ; and for the ascertainment of the true construction of said contract, a copy of the same is hereto appended, and prayed to be taken as a part of this answer."

The assignment, which is signed by Stanley and wife affixing their marks, is in these words :—

" Memorandum of an agreement made and entered into between David Stanley and Sarah, his wife, formerly Sarah Davis, and George Trawick and R. H. Poe, all of Fayette county, Alabama, *witnesseth*, that whereas one Nathaniel Davis, of Tuskaloosa county, Alabama, the father of the said Sarah Stanley, has departed this life, leaving an instrument

purporting to be his last will and testament, which has been contested by the heirs of the said Nathaniel Davis, (there being nine,) and is now pending in court and undecided ; and whereas the said Stanley and wife, becoming uneasy, are willing and desirous to sell their interest in the said will and estate for a sum certain, to be released of all the trouble and expense of contesting said will : Therefore, the said Trawick and Poe *has* paid them, the said Stanley and wife, one hundred dollars in hand, the receipt whereof is hereby acknowledged ; and for which consideration to them in hand paid, we do hereby assign, transfer, and sell to the said Trawick and Poe, all our right, title, interest and claim in and to every part and parcel of said will and estate, both real and personal ; and they are hereby authorized to demand, receive, and receipt for the same, in as full and ample manner as we would, being personally present ; and we do hereby ratify and confirm each and every act of the said Trawick and Poe, touching the premises. Given under our hands and seals, this 15th March, 1848."

The chancellor sustained the demurrer, and dismissed the bill ; and his decree is now assigned as error.

E. W. PECK, for the appellants.—In considering the questions raised by the demurrer and plea, the assignment is to be taken as having been made in good faith, and upon valuable consideration. The interest of Stanley and wife in the estate of Davis was assignable in equity. Vested rights *ad rem* and *in re*, possibilities coupled with an interest, and claims growing out of, and adhering to property, may pass by assignment.—*Per* STORY, J., in Comegys v. Vasse, 1 Peters, 213. Where a preference to enter lands has been acquired by occupancy and possession, the right of entry or occupancy is assignable.—Smith v. Rankin, 4 Yerger, 1. All choses in equity may be assigned in equity.—Dix v. Cobb, 4 Mass. 511 ; Parker v. Grant, 11 Mass. 157, note ; Wheeler v. Wheeler, 9 Cowen, 34 ; Eastman v. Wright, 6 Pick. 316 ; Welch v. Mandeville, 1 Wheaton, 236, and note. A contingent debt may be assigned in equity.—Crocker v. Whitney, 10 Mass. 316. A plaintiff on the record, in an action of

trespass *de bonis asportatis*, may assign his interest in the damages sought to be recovered.—North v. Turner, 9 Serg. & Rawle, 244. Courts of equity will establish assignments of contingent interests, against executors, administrators, and heirs, even on consideration of love and affection.—Fonb. Equity, 215, note. A mere naked possibility, or expectancy, such as an heir has to his ancestor's estate, may be assigned in equity for valuable consideration.—2 Story's Equity, §§ 1040–50. Where a chattel has been converted, the owner has but a mere *chose in action* in the property, and cannot assign it, so as to authorize the assignee to sue for it, at law, in his own name.—Dunklin v. Wilkins, 5 Ala. 199. A widow may assign her interest in her deceased husband's estate, and such assignment is sufficient, in equity, to pass her interest to the assignee.—Powell v. Powell, 10 Ala. 900. These authorities, to which many others might be added, establish the proposition, that the interest of Stanley and wife in the estate of Mrs. Stanley's father was assignable ; and if the assignment was made in good faith, and upon valuable consideration, a court of equity will uphold and establish it.

2. The assignment is not obnoxious to the charge of champerty or maintenance.—2 Story's Equity, §§ 1050–56 ; Williams v. Protheroe, 5 Bing. 309, or 15 E. C. L. 456 ; Thallhimer v. Brinkerhoff, 3 Cowen, 643. Champerty is a bargain, between a party to a pending suit and a third person, to divide the land, or other matter in suit, if they prevail at law ; whereupon the champertor is to carry on the suit at his own expense. Maintenance is an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it.—2 Story's Equity, § 1048. In the case of Harrington & Milligan v. Long, 2 Mylne & K. 590, upon which the chancellor mainly rests his decree, the purchase was not only made *pendente lite*, but for collateral purposes, and with a view to obtain relief in matters not directly connected with the object of the suit ; which suit was, by the purchase, to be used as an instrument of further litigation to accomplish the collateral purposes.

ORMOND & NICOLSON, *contra*, cited the following cases :—

Harrington & Milligan v. Long, 2 Mylne & K. 590 ; Wood v. Downes, 18 Vesey, 119 ; Byrne v. Frere, 2 Molloy, 157 ; Verdier v. Simons, 2 McCord's Ch. 385 ; Rust v. Larue, 4 Litt. 426 ; Holloway v. Lowe, 7 Porter, 488 ; Story's Equity, § 1054, and note 4 to § 1040.

CHILTON, C. J.—Although the modern decisions have relaxed the rigor of the law, as declared by the earlier adjudged cases, upon the subject of maintenance and champerty ; yet that doctrine obtains, both in courts of law and equity, and is not confined to cases of purchases by persons occupying some fiduciary or confidential relation to the vendor. The doctrine is founded on principles of sound public policy, and is designed to check vexatious litigation, and to promote purity and efficiency in the administration of justice. It is true, as remarked by Judge Kent, that the state of society, out of which the doctrine of maintenance originated, does not exist in this country.—4 Kent, 447, marg. But, in almost every community, there are officious, covetous persons, who, did the law allow it, would speculate in law-suits,—who would watch their opportunity to find persons discouraged by some turn their cause may have taken, and, by promises of indemnity against costs and expenses, purchase for a trifling consideration the entire interest, or a part of the subject-matter of the litigation, in the hope that, by bringing to bear the appliances at their command, they could succeed in the cause, or " conquer a peace" by driving their adversary into a favorable compromise. We may not have among us those " great men," spoken of by Lord Coke, (Co. Litt. 214 a,) in consequence of whose purchase of pretended titles " right might be trodden down, and the weak oppressed"; but so long as human nature remains as it is, theorise as we may, we must expect to find men, whose cupidity will prompt them to risk a small sum for the prospect of acquiring a much greater ; and having incurred the risk, they will not be very scrupulous in the means to attain their end, or in avoiding, harassing and oppressing their opponents,—men who are known never to abandon a case, so long as a court remains to which they can appeal, and who, by thus prolonging litigation, cause the ultimate success of their adversaries, in the

superadded fees to counsel, &c., in many cases to be more disastrous than early defeat.

The complainants may not fill this description,—we do not intimate that they do; nevertheless, if their contract could be supported, all the evils which result from maintenance and champerty would follow. They have purchased an interest in a fiercely litigated law-suit, indemnifying the nominal party against expenses and costs. For this they pay the sum of one hundred dollars; and the profits of their speculation, as exhibited by their bill, will perhaps exceed one thousand dollars. They may have acted very discreetly and fairly in the management of the litigation; but the law cuts off the temptation to act otherwise, by forbidding such speculation in the suits of others. While they may not have perverted the course of justice, it does not follow that others will not.

We have carefully looked into the cases upon this subject; and, while we readily concede the law to be, that distributees may assign their interest or shares in the estate to be distributed, yet if, as in this case, a controversy is going on as to such shares, and a law-suit is pending as to the validity of the supposed will of the testator or ancestor, upon the determination of which the share assigned will mainly (if not entirely) depend; and the assignee becomes a party to such controversy and suit,—taking the place of his assignor, releasing him from trouble, and agreeing to indemnify him against the costs and expenses of the suit,—we do not hesitate to say, that it is a species of maintenance, which, according to the better decisions, both ancient and modern, avoids the contract.

In Prosser v. Edwards, 1 Young & Col. 484, Lord Abinger takes a very correct view of the doctrine, and maintains, that the assignments of choses in action and equitable interests, which equity recognizes, are such interests as are recognized by third persons, and not merely by the party insisting on them. " All our cases," says he, " of maintenance and champerty are founded on the principle, that no encouragement should be given to litigation, by the introduction of parties to enforce those rights, which others are not disposed to enforce." He further insists, that although courts of equity have relaxed the ancient rule that choses in action are

44

not assignable, yet such assignment must be something more than a mere right to sue—" where a valuable consideration has passed, and a party is put in possession of that which he might acquire without litigation, there courts of equity will allow the assignee to stand in the right of the assignor." " Indeed," says Judge Story, " it has been laid down as a general rule, that where an equitable interest is assigned, in order to give the assignee a *locus standi in judicio*, in a court of equity, the party assigning such right must have some substantial possession, and some capability of personal enjoyment, and not a mere naked right to overset a legal instrument, or to maintain a suit."—2 Story's Equity, § 1040 *g*. The authority tending most strongly to sustain the appellants' views of this subject, is found in this same volume, (§ 1050,) where the author says, " a party may purchase by assignment the whole interest of another in a contract, or security, or other property which is in litigation, provided there be nothing in the contract which savors of maintenance ; that is, provided he does not undertake to pay any costs, or make any advances beyond the mere support of the exclusive interest which he has so assigned." In the case at bar, the assignor, as one of the litigants, was bound with the others for the whole of the costs, against which liability the complainants indemnified.

The cases of Willis v. The Duke of Portland, 3 Vesey, jr., 494 ; Wood v. Downes, 18 Vesey, jr., 125 ; and Stanley v. Jones, 7 Bing. 369, S. C. 20 Eng. C. L. Rep. 165, we think, in principle fully sustain the view we take of this case. So in Harrington and Milligan v. Long, 2 Mylne & Keene, 590, (S. C. 8 Cond. Ch. Rep. 140,) it was held, that while it was not maintenance to purchase an interest which is the subject of a suit, yet, *if the purchaser give an indemnity against all costs that have been or may be incurred by the seller in the prosecution of the suit*, the transaction amounts to maintenance. The case of Hartley v. Russell, 2 Sim. & Stu. 244, (1 Cond. Eng. C. Rep. 439,) does not militate against our conclusion. That was, in effect, a dealing with the equity of redemption, charging it with another debt. It is admitted in that case, that the agreement would have been champertous, had it stipulated that the purchaser should prosecute the suit instituted by

the seller against the holder of the securities, in consideration of *the profits* to be derived by the seller from the suit. It cannot be controverted, that a person may assign his equity of redemption in securities held by a third party, even *pendente lite*, without being subject to the pains of maintenance, (2 Spence's Eq. 871 ; Hartley v. Russell, *supra ;*) but this must be taken, subject to the above exception. Even such a contract may be champertous.

The American cases fully recognize the doctrine of main-tenance and champerty, as affecting civil contracts, whatever may be said of them in a criminal point of view. With us, champerty is the unlawful maintenance of a suit, in consider-ation of some bargain, to have a part of the thing in dispute, or some profit out of it ; and covers all transactions and contracts, whether by counsel or others, to have the whole or part of the thing or damages recovered.—Holloway v. Lowe, 7 Porter, 488 ; 1 Pick. Rep. 416 ; 4 Litt. R. 417 ; 1 Ham. 132 ; 5 John. Ch. Rep. 44 ; 17 Ala. 206 ; *ib.* 305 ; 1 Swan's (Tenn.) Rep. 393.

Some of the recent cases do indeed relax the rules which have heretofore obtained ; but we apprehend, when fully considered, they do not go the length of breaking down the barrier which the wisdom of ages has erected against the perversion of the course of justice, by opening a door for strangers to come in and interfere with suits in which they have no interest, aside from the agreement they may make to maintain them. The established exceptions which modern decisions have engrafted upon the doctrine, as to the *bona-fide* assignment for a valuable consideration of equitable interests, we feel bound to respect. But when, as is recited in the assignment before us, to which we may look in support of the defendants' plea, a protracted litigation has been carried on, and is pending, as to the validity of a will, and one of the contestants becoming uneasy, and willing and desirous of selling out for a small sum ($100) in hand the interest of such person in the will and estate, to be rid and " released of all the trouble and expense of contesting the will,"—disguise the transaction as we may, it is nothing less than the pur-chase on speculation of the chances of success in a pending law-suit,—the seller allowing it to proceed, being indemnified

against all expense, cost and trouble ; and the purchasers, (strangers) who thus interfere, bringing into the cause to bear upon the result whatever of power, influence or adroitness they may command. Any one of much experience at the bar need not be informed of the important bearing which such influence and management sometimes have upon the result of trials *in pais.*

Upon the whole, although contrary to our first impression, we are satisfied the decree of the chancellor upon this aspect of the case, is correct. It is therefore affirmed.

RICE, C. J.—The foregoing opinion, prepared by Chief Justice Chilton before he resigned his office, is adopted by us as our opinion in this case.