**516**     MATTER OF ZIMMERMAN.

Surrogate's Court, New York County, October, 1918.   [Vol. 104.

Matter of the Probate of a Paper Propounded as the Last Will and Testament of MARGARET E. ZIMMERMAN, Deceased.

(Surrogate's Court, New York County, October, 1918.)

Wills — probate — right of assignee of next of kin to contest — general principles relating to probate proceedings discussed.

> Where the only heirs at law and next of kin of a testatrix were a nephew and a niece, and the latter by an instrument in writing executed before the death of testatrix assigned to a nephew, his executors, administrators and assigns, certain moneys and other property, real or personal, to which she then was or might become entitled by reason of any or all of her rights, interests or claims in and to any of the estates or properties mentioned in said assignment, and the assignee executes a deed by which he transferred in trust all the property referred to and covered by said assignment to him, to invest and reinvest the same for the benefit of himself and wife during their joint lives, he has such a sufficiently distinct interest under the assignment as entitles him to contest the probate of the will, though the trustee under the deed of trust files no objection thereto.

> The general principles, statutes and judicial decisions regulating parties to probate proceedings, reviewed and discussed.

PROCEEDING upon the probate of a will.

Curtis, Mallet-Prevost & Colt (Wallace MacFarlane, of counsel), for proponents.

Guggenheimer, Untermyer & Marshall (Charles S. Guggenheimer and Arthur M. Wickwire, of counsel), for C. Clinton Furniss, contestant.

Reiley & Harrison, for William P. Furniss, contestant.

Charles May, for R. M. Minton.

Cornelius J. Sullivan, for N. Y. Society for Prevention of Cruelty to Children.

J. Mayhew Wainwright, for Society for Prevention of Cruelty to Animals.

Butcher, Tanner & Foster, for Church Mission of Help.

Middlebrook & Borland, for St. Michael's Church.

Frederic DeP. Foster, for Society for Relief of Destitute Children of Seamen.

FOWLER, S.   This proceeding being a contested probate in which a jury was demanded came on for hearing at the Trial Term of this court held for June, 1918. There being a preliminary question raised by the proponents concerning the status of an objector to the probate, the surrogate, in conformity with the modern and now established practice in this court (see Rule IV, N. Y. Surr. Court of 1880, 4 Redf. 541; *Matter of Hamilton,* 76 Hun, 200; *Henry* v. *Henry,* 4 Dem. 255), a practice recognized also in modern English courts of probate (Order XXXVI, R. 8; Mortimer Prob. Pr. 590), and in all other courts of like character (Miller's Irish Prob. Pr. 564), took preliminary cognizance of the issue of status and interest, meanwhile withholding the other issues to a convenient day for trial before him with the aid of a jury.   On investigation I find that this course was substantially the practice in the Prerogative Court.   *Waller* v. *Heseltine,* 1 Phil. 170, seems to have been misunderstood by the chancellor in *Public Administrator* v. *Watts,* 1 Paige, 347, which in any event must be deemed overruled by *Matter of*

**518**        MATTER OF ZIMMERMAN.

*Hamilton, supra,* as must *Norton* v. *Lawrence,* 1 Redf. 473, following *Public Administrator* v. *Watts.*.

Although the cause is now actually on for trial and final disposition at a jury session of the court, the actual presence of a jury not being essential to the disposition of such preliminary issue of interest, no jury was required to be drawn or sworn for the single purpose of disposing of the preliminary issue. Nor was it necessary that the determination of the status and interest of the contestant-objector should be decided in the course of the actual submission to the jury, under the late statute, of the issues of fact raised by objections to the probate. In the absence of any statutory direction to that end the course of the trial in a contested probate proceeding, where a jury is demanded, rests in the discretion of the surrogate presiding when the issues appear on the trial docket of this court.

There seems to be some misapprehension concerning the fundamental nature of a trial of issues of fact in a contested probate proceeding conducted by a surrogate with the assistance of a jury. The learned counsel for the contestant-objector, whose *status* and interest is challenged, seems to entertain the conception that a probate proceeding in this court, since the Surrogates' Act of 1914, has become a common-law action, to be governed by all the provisions governing trials of other common-law actions at law in the Supreme Court. Consequently he urges that all issuable matters of fact in this probate proceeding are to be determined in the course of the actual trial of the issues of fact raised by the objections; or, in other words, in the presence of the jury when a jury has been duly demanded by a contestant-objector. This position carries its own refutation, for, in the first place, the preliminary issue of *status* or interest is not raised by the

written objections, but arises *dehors* such objections, by a preliminary motion as to interest taken *ore tenus*, if the proponent please, or in writing, if he so prefer.

In any consideration of the nature of a trial with the aid of a jury in a contested probate proceeding, it is necessary to bear in mind the object of the proceeding, and how far the sections of the Code of Civil Procedure, regulating the trial of actions at law in the Supreme Courts, should be relevant to a contested probate proceeding in the Surrogates' Courts. In *Matter of Huber,* 103 Misc. Rep. 599, I very lately had occasion to go over some of the ground indicated, and to point out several of the essential differences between an action at law in the other courts of record of this state and a special proceeding for probate of a testamentary script propounded and resisted, when the issues come on for trial before a surrogate with the aid of a jury. It is true that the Surrogates' Law of 1914 (Code Civ. Pro. § 2770) contains the authority for a cross-application of the sections of the Code stating rules of procedure in the other courts of record to contested probate proceedings conducted with juries in this court. But a cursory reading of section 2770 discloses that the cross-application of such other sections is very provisional, and it should be so in view of the essential differences between proceedings in the ordinary courts and in the courts of the surrogates.

The fact that by statute a contestant-objector to a proceeding for probate in this court is now become entitled to submit to a jury certain issues of fact raised by his written objections (Code Civ. Pro. § 2617) does not of itself import that all the rules regulating trials by jury in actions at law in the other courts of record apply throughout to special proceedings in this court. The statute conferring a right of trial by jury in this

court in contested probate proceedings *ex hypothesi* would be amply satisfied by the surrogate's due submission at any time of the appropriate issues of fact to a jury. The course of such submission and the time when necessarily rest, in the absence of a statutory direction to the contrary, largely in the discretion of the surrogate presiding at the trial. No other court of the state would in law be at liberty to say that the surrogate was in error in so doing, unless they produced some statute or controlling authority which the surrogate had contravened. It would not, I think, be consistent with the constitution of government or orderly procedure that they usurp all the functions of the surrogate and sanction, *ex mero motu suo,* another procedure more to their individual tastes. The decision in *Matter of Hamilton,* 76 Hun, 208, hardly justifies depriving a surrogate of all judicial discretion. A surrogate's jurisdiction has been much extended by later legislation and it is not consistent to deprive him of all the usual discretionary powers of a judge.

Conjecturally, the surrogate would not be in error if he should in a contested probate exercise his discretion as a trial judge and submit an issue of fraud, for example, to one jury, and at a subsequent time an issue of " undue influence," for example, to another jury. The contestant-objector would have no solid right to complain of such course, for his demand for a jury trial of the issues of fact would have prevailed. Nor would such a separation of the trial of issues be in the slightest degree disorderly. On the contrary it would tend to greater precision. At common law an issue of undue influence in a probate proceeding is a separate issue (*Parfitt* v. *Lawless,* 1872, 2 P. & D. 470, 471; *White* v. *White,* 1862, 2 S. & T. 504; *Riding* v.

*Hawkins,* 1889, 14 P. D. 56; *Cunliffe* v. *Cross,* 1863, 32 L. J. P. 68), which in a probate cause may be submitted to a jury apart from other issues in the discretion of the judge presiding at the trial. Certainly a probate proceeding being a proceeding *in rem* (as often determined by the Court of Appeals), and in the nature of an inquest and not a trial of an action at law (*Matter of Huber, supra*), the inquest should be conducted by the surrogate in a manner best calculated to elicit the truth. That should be regarded at present as the one fundamental rule regulating all such inquiries by the surrogate with the aid of a jury. While the Appellate Division is a court of original jurisdiction in probate cases (*Matter of Hamilton,* 76 Hun, 208), whether, since the statute conferring a right to trial by jury, in probate cases, it must employ a jury in its investigation of fact in such probate cases as they choose to hear, is for them to consider. But all these points are by way of premises to what follows; they need not be finally adjudicated in the matter now before the surrogate, for such matter is very narrow.

Mrs. Margaret E. Zimmerman, who before her marriage was Margaret E. Furniss, died on March 16, 1918. A paper purporting to be her last will and testament was duly filed in this court for probate, and objections to the probate having been filed by one C. Clinton Furniss, a preliminary question was raised by the proponents as to the right of C. Clinton Furniss to file objections to the probate of the paper purporting to be the last will and testament of the deceased, and this question must be determined before proceeding further.

Margaret E. Zimmerman was not survived by a father, mother, husband or child. Her only heirs at law and next of kin are William Ponsonby Furniss, a

Surrogate's Court, New York County, October, 1918.   [Vol. 104.

nephew, and Grace Livingston Furniss, a niece. C. Clinton Furniss, who has filed the objections to the probate of the will of the deceased, is a son of William Ponsonby Furniss, and therefore he is neither an heir at law nor next of kin of the deceased. He does not, however, claim the right to file objections to the probate of the will because of his relationship to the deceased, but because of an assignment of interest in the estate of the deceased made to him by his aunt, said Grace Livingston Furniss. The agreement by which the assignment was effected is dated June 13, 1910, and was executed by Grace Livingston Furniss, party of the first part; Ruth McFarland Furniss, party of the second part, and C. Clinton Furniss, party of the third part. It recites, among other things, that whereas the party of the first part claims that she now has, or will in the future have, an interest in the estate of Margaret E. Zimmerman, and whereas she desires to protect such interest and has employed certain counsel for the purpose of advising her in relation to it, and whereas she desires to be indemnified against the payment of disbursements and expenses incurred in connection with the proceedings for the enforcement of her interest, the parties of the second and third parts assume the payment of all the disbursements and expenses which may be incurred on behalf of the party of the first part by counsel employed by her, and the party of the first part " does hereby give, sell, assign, transfer and set over as follows: To C. Clinton Furniss, the party of the third part, his heirs, executors, administrators and assigns thirty per cent. of all sums of money and other property, real or personal, to which the party of the first part now is or may become entitled by reason of any or all of her rights, interests or claims in and to any of the estates or properties mentioned in the preamble to this agreement."

After the death of Mrs. Zimmerman and on the 15th day of June, 1918, Grace Livingston Furniss, by an instrument in writing, duly acknowledged, ratified and approved in every respect the agreement above referred to. Whether such an instrument could be ratified I need not now consider. As a rule a void instrument may not be ratified. It may, however, be operative as a new assignment. On July 17, 1917, C. Clinton Furniss executed a deed of trust to the Columbia Trust Company of the city of New York by which he transferred to the said trustee in trust all the property, both real and personal, to which he or his heirs were entitled or may hereafter become entitled under the deed of assignment dated June 17, 1910, and executed by Grace Livingston Furniss, to invest and reinvest the same and to apply the rents, income and profits to the grantor and his wife during their joint lives.

The Columbia Trust Company has appeared in this proceeding, but has not filed objections to the probate of the paper purporting to be the last will of the deceased. Upon the argument before me it was conceded by the counsel for the proponents that the expectation of Grace Livingston Furniss to participate in the estate of the deceased was assignable; that a portion of such interest was duly assigned to C. Clinton Furniss, and that such assignment would have conferred upon the latter the right to contest had not the deed of trust to the Columbia Trust Company intervened. The question presented for determination, therefore, is whether in view of the assignment made by C. Clinton Furniss to the Columbia Trust Company he has the right to file objections to the probate of the paper purporting to be the last will and testament of the deceased. The preliminary question naturally

Surrogate's Court, New York County, October, 1918. [Vol. 104.

arises (1) whether a mere possibility or " *spes succes-sionis* " and (2) the right to contest a will are assignable in our modern law. If not, whether the ratification validates it. Had it not been for the claims and concessions made by the eminent counsel now before me in this matter, that they were to be regarded by me as assignable for the purposes of the motion, I should, for the reasons which I am about to state, have thought otherwise and that they were not assignable. The expectancy of an heir apparent is, during the life of his ancestor, a mere hope or anticipation. Per Kay, J., *Matter of Parsons,* 59 L. J. Ch. 666; 45 Ch. Div. 1.

Before entering on the consideration of the specific question whether a *spes successionis* and the right to contest a will are assignable or not in our jurisprudence, it may be well to have in mind the singular history and development of the common law regulating assignments of " choses in action." At common law, choses in action, with few exceptions noted below, were not assignable; that is, if one assigned a mere naked right of action arising *ex contractu,* the assignee could not at common law bring an action at common law in his own name against the debtor or obligor. The old writer, Coke, and his modern successor, Blackstone, state the reason for this arbitrary and gothic rule to be " the avoyding of maintenance, suppression of right, and stirring up of suits; and therefore nothing in action, *entrie,* or *re-entrie,* can be granted over; for so under colour thereof pretended titles might be granted to great men, whereby right might be trodden down and the weak oppressed, which the common law forbiddeth, as men to grant before they be in possession." Co. Litt. 214-a; 2 Black. Com. 442; *Miller* v. *Emans,* 19 N. Y. 390. Profounder writers on the mediaeval law of England question this old reason assigned for the rule, and attribute it to archaic con-

ceptions of contract, creating a strictly personal obligation between the creditor and the debtor. Pollock Cont. 206. Other moderns find a reason for the rule in the fact that actual delivery of possession of the thing owned was essential to ownership of property at common law, and therefore, as possession of a chose in action could not be actually delivered, it could not be regarded in law as transferred. Prof. Maitland, 2 Law Quar. Rev. 481; Goodeve Pers. Prop. 125. I think, however, Blackstone's definition of " chose in action " (2 Black. Com. 396) anticipates this " discovery " of the moderns (cf. id. 441). Thus the legal interest remained in the assignor.

Without regard to the speculations of historical jurists, it is certain that the common law of the eighteenth century, continued in force and adopted in this state in 1777, did not distinctly recognize the right of a person entitled to a chose in action by assignment to sue at law in respect of it, at least, in his own name. 2 Black. Com. 442; 4 Kent Com. 471; 1 Chitty Pl. 15, and see the report of the New York Commissioners on Practice and Pleading in 1848, p. 123. The apparent narrowness of this purely mediaeval rule gave rise to great practical inconvenience, and the diligent student of old common-law authorities may readily perceive a disposition on the part of the early courts of law to soften and narrow the rigor of the rule in its practical application. So in this state also, *Wardell* v. *Eden,* 2 Johns. Cas. 121; *Littlefield* v. *Storey,* 3 Johns. 425; Laws of 1835, chap. 197. Thus a chose in action could always be assigned by and to the Crown (Pollock Cont. 206; Goodeve Pers. Prop. 126; Anson Cont. 289); an annuity was assignable at common law (Co. Litt. 144, 6 Harg. n. 1), and therefore never tended to a perpetuity, so the law merchant quickly recognized the

assignability of commercial paper as a necessity of commerce. Anson Cont. 289.

By the time of the foundation of our independent state government and its express adoption of the former common law of the province of New York, it may be affirmed generally that in some form or other nearly all choses of action arising on contract, with some few well-known and stated exceptions, had become assignable either at law or in equity. *Field* v. *City of New York,* 6 N. Y. 179, 188; Smith Real & Pers. Prop. 697. See the exceptions stated, *infra.*

But as an assignment did not strictly carry the legal title the law courts in the reign of King Henry VII began to adopt the theory that the assignee of a chose in action could sue in the name of the assignor (Bro. Abr. tit. " Chose in Action," pl. 3; 15 Henry VII, 2), or else make the assignor a coplaintiff. 1 Chitty Pl. 3, 15, and notes; *Bird* v. *Caritat,* 2 Johns. 342; *Field* v. *City of New York,* 6 N. Y. 179, 188; *Heermans* v. *Ellsworth,* 64 id. 161; *Freund* v. *Importers & Trad. Nat. Bank,* 76 id. 356. Courts of law had nothing to do with equitable titles. But if there was no remedy at law, or the  assignor refused to allow the use of his name, a court of equity had then jurisdiction (Pollock Cont. 207; *Freund* v. *Importers & Trad. Nat. Bank,* 76 N. Y. 356); not otherwise. *Carter* v. *United Ins. Co.,* 1 Johns. Ch. 463; *Mills* v. *Hoag,* 7 Paige, 18, 21; *Field* v. *Maghee,* 5 id. 539; *Rogers* v. *Traders Ins. Co.,* 6 id. 598. These rules of practice were very troublesome, and too often the assignee who sued at law was turned out of the law courts, while a like misfortune frequently happened to the assignee who invoked the aid of the Court of Chancery. Report of N. Y. Commissioners on Practice & Pleading in the year 1848, p. 124.

Long after the jurisprudence of the common law had thus recognized the right to assign certain choses in

action in the qualified manner already stated, it always even then excepted certain other choses in action as inherently incapable of being assigned, either at law or in equity. Thus certain contracts requiring personal skill or confidence (Goodeve Pers. Prop. 134; Anson Cont. 244, 246, 291; *Hayes* v. *Willio,* 4 Daly, 259), and all such, we shall find, remain incapable of assignment even since the modern statute hereafter mentioned. *New York Banknote Co.* v. *Hamilton B. N. E. & P. Co.,* 180 N. Y. 291; *Levy* v. *Cohen,* 103 App. Div. 199; *Matter of Worthington,* 141 N. Y. 9, 11; Pers. Prop. Law, § 41.

When, after the adoption of the New York Constitution of 1846, the commissioners on Code pleading made their first report to the legislature they stated that they had adopted the equity rule " that he who has the right is the person to pursue the remedy." The first Code accordingly provided: " Every action must be prosecuted in the name of the real party in interest." Certain trustees of express trusts were, however, permitted to sue in their own names without joining the *cestuis que trustent.* Laws of 1848, chap. 379, §§ 111, 113; Laws of 1849, chap. 379, §§ 91, 93. These very simple and direct provisions have been the basis of all subsequent legislation on this subject. They did not, however, put an end to all uncertainties as to the real party entitled to maintain suit (*Getty* v. *Devlin,* 70 N. Y. 512; *Freund* v. *Importers & Traders Nat. Bank,* 76 id. 356; Report to the Legislature with Code Civ. Pro. § 1910); nor did they make that assignable which was not before assignable. *Hodgman* v. *Western R. Corp.,* 7 How. Pr. 492; *Zabriskie* v. *Smith,* 13 N. Y. 322.

When the late Mr. Throop came to revise Mr. Field's Code and its subsequent amendments he found so many decisions on the assignability of choses in action and

on the real parties in interest in actions on them that he reported to the legislature there was no provision of the Code of Procedure more in need of remodeling than sections 111 and 112 of the old Code of 1849. See his report to the legislature with Code Civ. Pro. §§ 1909–1918. He accordingly intended to make the Code of Civil Procedure very plain. Section 449, Code of Civil Procedure, re-enacted that every action must be prosecuted in the name of the real party in interest, except that executors or administrators and trustees of an express trust might still continue to sue without joining those they represent; and in sections 1909, 1910 and 1912, Code of Civil Procedure, it was stated very plainly that all claims and demands were transferable, except certain categories specially excepted and enumerated.

The statute regulating assignments of choses in this state is now re-enacted and contained in the Personal Property Law, section 41. It provides that " any claim or demand can be transferred," subject to certain specific exceptions enumerated. It is with the exceptions that we are here most concerned. Nothing under the existing law of New York is assignable when it would contravene " public policy." Per. Prop. Law, § 41, subd. 3. Whether either a *spes successionis* or a naked right to contest a will is assignable under this exception in our statute is the immediate question which I next desire to consider.

" Public policy " is a very large and fascinating theme to the American courts, larger and more fascinating than to the courts of any other common-law country. In England, the original home of the common law, judicial condemnation of law on the ground of public policy is not favored. As Jessel, M. R., said in *Besant* v. *Wood,* (1879) L. R. (12 Ch. D.) 620, it is a mere matter of a judge's opinion " what public pol-

Misc.]    Surrogate's Court, New York County, October, 1918.

icy is." In another case, Burrough, J., said: " Public policy is a very unruly horse, and when once you get astride it you never know where it will carry you. The argument of public policy leads you from sound law and is never argued but when all other points fail." *Richardson* v. *Mellish*, (1824) 3 Bing. 334. Such has always been my own opinion about judicial specula- tions on this debatable subject. But like all other opinions it ought not to be dogmatic. There are many historical instances in which certain assignments or transfers have been universally condemned in all ages as contrary to public policy. In the instance of such reasonable and established exceptions there is nothing for me to do but to follow the decisions. Now I take it that the assignment of a *" spes successionis "* is one of these established instances. An assignment of a *spes successionis* and right to contest a will is not the same thing as a covenant not to contest a will which is favored. See note to *Grochowski* v. *Grochowski*, 13 L. R. A. (N. S.) 484. It is contrary to public policy that *spes successionis* should be assignable. An heir apparent or presumptive next of kin has no interest in his ancestor's estate until the latter die. The only exception seems to be in Ireland, where *spes succes- sionis,* if not too remote, may be recognized in grant of administration. Miller Ir. Prob. Pr. 317. The maxim *" nemo est haeres viventis "* is, in England, regarded as absolutely sound in law. It never can be determined until a person come to die who are next of kin or heirs at law of such person. How can one assign that which he has not and may never have? To be sure, he may, in several instances, covenant in equity against his own future acts in respect of property rights which may accrue *in futuro;* but in law he can- not assign a hope of succession which he may never

34

realize.   I need not, however, now decide whether
" *spes successionis* " or a right to contest a will are
" choses in action " or assignable.   If I were obliged
to consider that point, my first impression would be
that technically they were not " choses in action " or
" claims or demands," but fall under a totally differ-
ent category.   But whether they are or are not " choses
in action," if they are so, then, expressly, they are
under our statute not assignable in contravention of
public policy.   In all common-law countries, and also
in Scotland, where the civil law prevails, *spes succes-
sionis* from a living person is regarded as not assign-
able without the aid of some modern statute.   *Morison*
v. *Reid,* 30 Sc. L. R. 477; *cf. Matter of Wyllie,* 28 id.
855; *Matter of Parsons,* 45 Ch. D. 55, 56; *Allcard* v.
*Walker,* (1896) 2 Ch. 369, 380; *Matter of Beaupre's
Trusts,* 21 L. R. (Ir.) 397.   Doubtless some of the
adjudications last cited are not precisely in point here;
for example, where a modern English statute makes all
" property in expectation " assignable, the only ques-
tion for judicial consideration then is, whether *spes
successionis* is " property " within the meaning of
the particular statute.   In such cases it is only the
argument which bears at all on the assignability of
*spes successionis* under our own statute, and not the
decision.   But I have little doubt that in our law a
voluntary assignment of a *spes successionis* would not
be enforcible, even in equity.   If so, the subsequent
ratification, after Mrs. Zimmerman's death, would be
inadequate to transfer anything to the trust company,
unless it operated as a new assignment.

That a naked right to contest a will, either after
or before testator's death, is not now assignable has
been expressly held by a common-law court, which
all American lawyers, with good reason, hold in
respect.   *Poe* v. *Davis,* 29 Ala. 676.   The courts of

Alabama have been very learned common-law courts. Notwithstanding modern legislation extending the law of assignability in this state, I should be inclined in construing it to follow the reasoning of all the foreign adjudications cited above were the question of the assignability of a naked *spes successionis* and a right to contest a will placed before me, but it is not placed before me, as the eminent counsel in this matter choose to admit, that " *spes successionis* " and the naked right to contest a will are both assignable under our statutes, and they prefer to withdraw from me the consideration of this interesting point and rest on other points.  So let it be, then.  For the purposes of this proceeding only I will, at the request of counsel, assume, contrary to my own inclination, that *spes successionis* and a right to contest a will are assignable in our law and that therefore the Columbia Trust Company may contest Mrs. Zimmerman's will, if it be so advised.

The only point then remaining here is the narrower one, whether the Columbia Trust Company alone, or C. Clinton Furniss alone, or the trust company and C. Clinton Furniss, their *cestui que trust,* jointly, are the proper contestant-objectors in this proceeding under the several assignments placed in evidence. C. Clinton Furniss is neither an heir-at-law nor next of kin of Mrs. Zimmerman, deceased.  His right arises by reason of the alleged assignments.  The counsel for proponents insists that by virtue of such assignments (treating them *in arguendo* as valid instruments *pro hac vice*) the trust company alone is the only person who can file objections to the probate, and that C. Clinton Furniss, their *cestui,* cannot file them as he has no standing after the assignments he made to the trust company for his benefit.  The learned

Surrogate's Court, New York County, October, 1918.   [Vol. 104.

counsel for C. Clinton Furniss strenuously, on the other hand, insist that he has the right to file written objections and to contest the probate, without joining the Columbia Trust Company, which, though cited, appears but does not contest.   Both of the very learned counsel submit to me numerous adjudications of the common-law and the equity courts in reference to parties to actions at law or suits in equity where the legal title was in the trustee.   In my humble judgment such cases are remotely relevant as authority to this proceeding in this court, and then more by way of analogy than otherwise.

As already stated, a contested probate proceeding is neither an action at law nor a suit in equity; it is a special proceeding conducted in a special and historic type of tribunal, and it is *sui generis* notwithstanding the late statutes regulating juries.   To determine accurately, in conformity with the best legal tradition, the nature of such a proceeding in this court, we must have recourse in the final analysis to the jurisdiction conferred and intended to be conferred on the surrogates of this state.   In the absence of modern decisions of our appellate courts on the particular point, if the statute is ambiguous, we are at liberty to examine the constitution of the court and its common law.   Of course when the superior tribunals have passed on a particular point their decisions become the highest law.   To the nature and extent of the jurisdiction conferred · and intended to be conferred on the present surrogates I have often referred in decisions, some of which are cited below.   I can add nothing more to what I have there so imperfectly said. I venture to believe, however, that my conclusions are confirmed by many scattered adjudications of the superior courts of this state, which are less fallible.   These

cannot be retracted or explained away. The Surrogates' Courts, when not regulated by statute or decisions of the courts of last resort, proceed according to the course of the old common law applicable to the Surrogates' Courts at their inception as courts of this state. *Matter of Carter,* 74 Misc. Rep. 6, 7 *et seq.,* citing *Martin* v. *Dry Dock, E. B. & B. R. R. Co.,* 92 N. Y. 74; *Matter of Connell,* 75 Misc. Rep. 578; *Matter of Work,* 76 id. 405; revd. on another point; *Matter of Van Ness,* 78 id. 600; *Matter of Swartz,* 79 id. 392; *Matter of Martin,* 80 id. 21 *et seq.; Matter of Hermann,* 83 id. 286 *et seq.; Matter of Smart,* 84 id. 339; *Matter of Davis,* 99 id. 453, 454; *Matter of Parker,* 100 id. 224, 225; *Matter of de Saulles,* 101 id. 451.

Thus it is that the Code of Civil Procedure is not in all cases the only word on proper parties to proceedings for probate in this court. But even if the whole Code of Civil Procedure be regarded as made relevant to this court under the Surrogates' Act of 1914, a proceeding for probate is not become an "action" under the Code (Code Civ. Pro. §§ 416, 3339), but continues a special proceeding *in rem,* the precise nature of which can be determined only by reference to the common law of this court, for this court has a common law of its own as much as the Supreme Court or the former Court of Chancery of this state. A probate continues to be since the Code a special proceeding, not an action. Consequently, the rules of the Code regulating actions are not relevant here. When we have regard to first principles, and fundamentals in this court, we look not only at the decisions, but at both our own common law and the statutes abrogating the common law. This method is abundantly sustained not only by the affirmed reported decisions cited above, but particularly by the decisions

of that eminent judge of this court, Dr. Bradford, whose greatest contribution to science was the adaptation of the old common law applicable to the old probate tribunals to the modern Surrogates' Courts of this state. For that reason, among others, his reported decisions have an authority in the probate courts of this country similar to the reported decisions of Chancellor Kent in American courts of equity.

I shall first consider counsel's thorough discussion of the New York statutes relative to parties who may contest probates in this court. Section 2617 of the Code of Civil Procedure provides that "Any person interested in the event, as devisee, legatee, *or otherwise,* in a will or codicil offered for probate; or interested as heir-at-law, next of kin, *or otherwise,* in any property, any portion of which is disposed of or affected * * * by a will or codicil offered for probate; * * * may file objections to any will or codicil so offered for probate." This section would seem at first glance to employ language including a number of persons as contestants of wills who are not in the categories of either heirs-at-law or next of kin of a putative testator. If the statute is clear in that particular, it of course ends discussion; but it is thought by some surrogates not to be clear, and they would limit the scope of the language so as to make it apply only to those who would benefit if the testamentary paper in dispute were refused probate.

In *Matter of Redfield,* 94 Misc. Rep. 2, 26, 27, Surrogate Sawyer, of Westchester county, apparently decided that the words of the new section (Code Civ. Pro. 1914, § 2617), *" any person interested in the event "* were the equivalent of the phrase in the old section (Code Civ. Pro. 1913, § 2617), *" or who is otherwise interested in sustaining or defeating the*

*will.''* The following words of the new section (Code Civ. Pro. 1914, § 2617), '' interested as heirs at law, next of kin, *or otherwise, in any property disposed of or affected by a will or codicil offered for probaie,''* have not been the subject of judicial construction in so far as I am advised.

That trustees and not the *cestuis que trustent* are *prima facie* the proper parties to an accounting proceeding in the Surrogate's Court has been intimated in *Matter of Redfield,* 94 Misc. Rep. 20. In that matter it appeared that Caroline P. Saint-Cyr left by her will $100,000 in trust for her infant grandchild, Henry Alexander Redfield, making her son, his father, Henry Sherman Redfield, trustee. By a codicil this legacy was reduced to $50,000. On an accounting of the trustee the special guardian for the infant suggested to the court in his report the advisability of opening the proceedings for the probate of the will and codicil, and the appointment of a special guardian for the infant to inquire into the validity of the codicil. It appeared that on the probate proceedings the infant did not petition for the appointment of a special guardian, his general guardian did not appear for him, and no special guardian was appointed. After comparing the old and new sections 2617 of the Code of Civil Procedure, which define what parties may file objections to any will or codicil offered for probate, Mr. Surrogate Sawyer, of Westchester county, decided that no ground was shown for reopening the probate proceedings; that the infant was not a proper party to such proceedings; that he was in law represented by his trustee, namely, his father; that the trustee could have filed objections to the last codicil if he had so desired and believed he had valid and sufficient reasons. It will be observed that the point came up in

*Matter of Redfield,* not in a probate proceeding, but in an accounting proceeding, which is a substitute for the old bill in equity. *Matter of Kent,* 92 Misc. Rep. 113, 118 *et seq.* Whether I would be willing to go so far as Mr. Surrogate Sawyer intimates in regard to parties to an accounting proceeding, as chancery was notably liberal as to parties in all accounting suits, I need not now consider, for this proceeding now before me is not an accounting proceeding, but strictly a probate proceeding, and for that reason alone Mr. Surrogate Sawyer's *dictum* in *Matter of Redfield* as to parties in probate proceedings is not here *res judicata.*

Whether the trustee or the *cestui que trust* is, in this matter now before me, under the deeds of assignments in evidence the real party in interest and the proper party to file and promote the objections to probate has nowhere been directly adjudicated. I venture to think the point ought to be decided in this court on somewhat broader principles and considerations than any yet intimated. The cases cited by counsel on parties to actions are not conclusive in this court. Parties allowable in actions at law have always been restricted; parties to suits in equity, while much more liberally allowed, are tempered by rules promoted in actions at law wherever possible, so as to produce uniformity of procedure between the two co-ordinated tribunals. In equity whenever the interest of the trustee and the *cestuis* were in harmony the presence of the trustee was sufficient. No such considerations strictly apply to parties in this court in a contested probate, which is already stated a proceeding *in rem.* *Matter of Horton,* 217 N. Y. 368. Now a court which proceeds *in rem* is a public court, or a *quasi* public court, and at the audience in which the *res* comes to be condemned, or adjudicated, all the world is theoretically

invited to appear, if interested at all, or in any manner, however remotely, because the adjudication will fix a future status which will be worldwide in effect and operation. It is for this reason also that the modern adjudications of foreign courts proceeding *in rem,* unlike adjudications *in personam,* are an unusual authority everywhere in courts of a like character.

I shall now glance at the practice in the courts from which we derive our procedure and common law. Let me repeat, at this point, that the practice on probates in New York was originally as near as might be to that pursued in England in the Prerogative Court. *Pub. Admr.* v. *Watts,* 1 Paige, 368, and other cases cited *supra.* The Revised Statutes of 1830, although not abrogating all the common law relevant to probate matters, much affected the old *caveats* filed against probate. The statutes, substituting new practice in part, required a citation in all cases in any proceeding to prove a will, and made the decree conclusive *sub modo* (2 R. S. 61, § 29; *Collier* v. *Idley,* 1 Bradf. 94), thus superseding the former period of thirty years within which persons interested might formerly require the executors to prove the will *per testes* or in solemn form. The Revised Statutes, in other words, substituted to some extent certain statutory rules of practice in the Surrogates' Courts for the old procedure on probate. Instead of the former period of thirty years for probate in solemn form, the Revised Statutes provided that even where a will had been proved before the surrogate, any of the *next of kin* of testator might contest the probate only within one year thereafter. 2 R. S. 61, § 30. As no probate was conclusive as to heirs-at-law, no provision seems to have been made at first by the statute for their contest within a year. This limited right of contest within

Surrogate's Court, New York County, October, 1918. [Vol. 104.

a year seems to have been a substitute for the old practice of requiring proof in solemn form. *Collier* v. *Idley,* 1 Bradf. 94.

Obviously, under the Revised Statutes, *prima facie,* no one but next of kin could recontest probate within a year. But be this as it may, under more modern statutes the persons who may now contest probates have been from time to time enlarged. The present situation of the statute book on that point has been referred to above at length and need not be repeated. As before intimated the language of the present section 2617 of the Code of Civil Procedure seems exceedingly liberal as to parties in this court. It is therefore in line with the practice of the earlier courts of probate in New York and England. It may be well at this point to indicate what this earlier practice was as to parties in probate cases.

Anciently in the ecclesiastical courts of England having jurisdiction of probates, the practice as to parties entitled to be heard was exceedingly liberal. Oughton, the great authority, says: "*Tertius intervenire potest pro interesse suo in omni causa quæ tangit bona aut personam suam.*" Ordo Judiciorum, 28 Titulus XXIV. This is equivalent to saying that any one interested might intervene. This liberality of the old ecclesiastical courts was continued in England as part of the modern probate law. Mortimer Prob. Prac. 592–597. It was established law at the time when the ecclesiastical jurisdiction and ecclesiastical law were transferred to America. I have shown that the common law of England, administered in the ecclesiastical courts, was transferred to New York, became part of our common law by constitutional limitation and remains such, except where modified by statute. *Public Administrator* v. *Watts,* 1 Paige, 368; *Matter of Smart,* 84 Misc. Rep. 339, and

other cases cited *supra*. Of course, what persons were interested in law was a subject as much discussed in the old courts of probate as it is now, and certain limitations were laid down in the old decisions which are not necessary for us now to consider in detail. It will suffice to say that all interested persons were allowed to appear at the probate audience, when in solemn form, and to examine witnesses.

The point now here has in substance, as I think, been adjudicated in modern English courts of probate, which in certain cases refer back to the same practice and common law that in the last resort continue authoritative in the probate courts of this state. In other words, the practice as to parties which obtained in the old prerogative courts is retained in the modern courts of probate of both England (Tristram & Coote Prob. Pr. 319; rules 4, 5 and 6, C. B.) and New York (see cases cited *supra*), in the absence of statute changing the common-law rules.

In the English courts of probate, as in like courts elsewhere, persons absolutely without interest cannot intervene. *Brotherton* v. *Hellier*, (1754) 1 Lee, 599, 600; *Hiram* v. *Walker*, (1827) 1 Hagg. 73; Dixon Prob. Pr. 309; Mortimer Prob. Pr. 588; *Wright* v. *Rutherford*, (1756) 2 Lee, 266. The wisdom of this general rule is obvious. A person without any interest whatever is an intermeddler only. But the very slightest interest, or even a possibility of interest, now suffices to allow persons to intervene and be heard in the English courts of probate. Mortimer Prob. Pr. 588, citing *Turner* v. *Meyers*, 1 Hagg. Consist. 415 n.; *Kipping* v. *Ash*, (1845) 1 Robt. 270, 273; *Dixon* v. *Allison*, (1864) 3 S. & T. 572. But see *Crispin* v. *Doglioni*, (1860) 2 id. 17. The general rule in the English probate courts is that it is highly expedient that the

insinuation, decree or adjudication shall be as far reaching as possible, and that all persons whose interests may by any possibility be adversely affected should be given an opportunity to be heard. Mortimer Prob. Pr. 590. In *Lindsay* v. *Lindsay*, (1873) 42 L. J. P. 32, an interest acquired subsequently to the testator's death by purchase of part of his estate affected by the will was held sufficient to entitle a person to intervene in a suit for revocation of the will. The interest of a creditor of a next of kin was recognized as sufficient in an Irish case. *Goods of White,* 31 L. R. (Ir.) 385. While I find no English decision holding that a trustee and not a *cestui que trust* is the proper person to file a caveat in a probate proceeding, I do find modern decisions which recognize a *cestui que trust* as a person having a *locus standi* in probate courts quite apart from his trustee. Ratcliffe, (1889) 110; *Pegg* v. *Chamberlain,* 1 Sw. & Tr. 528.

I may refer again, in parenthesis, to the fact that under the Revised Statutes of 1830 only next of kin were afforded an opportunity as a substitute for the quondam probate in solemn form to have a second probate of a will within a year. Willard Exrs. & Surr. 230. This limitation to next of kin, however, is not argumentative here. This particular statute was an enabling provision, conferring a right of action on particular persons named, which is irrelevant to the point now before me. The statutes of this state were thereafter again changed so as to restore in substance the old rule in courts of this character, viz., that all parties having any interest whatever in the matter, or in the property passing under the paper propounded, had a right to appear and contest probate. The statute, in the final shape in which it now stands in this state, was therefore only confirmatory of the common law of this court. It neither enlarged nor restricted

parties who might therefore contest probate of testamentary papers. After Mr. Throop's intelligent revision of chapter 18 of the new Code, regulating surrogates, it was solemnly held that intervenors in probates must show their interest. *Matter of Hammersley*, 7 N. Y. St. Repr. 292. But this was always the rule, time out of mind, both in this court and in all courts of like character. Id. 293. The present rule, section 2617 of the Code of Civil Procedure, that parties having an interest may contest probate, is a very ancient rule of this court in a new garb. Mr. Throop was a native practitioner of the old school and well versed in the common law transferred to the Surrogates' Courts of New York. With the history of all the jurisdictions in New York he was more thoroughly familiar than any other codifier. He well knew that interest was the old test of the right to be heard on the probate of a will in courts of this character. As to what constituted interest Mr. Throop obviously intended to leave the determination to the common law governing this court, and his intention must be taken to have been the intention of the legislature enacting the present revision of the Surrogates' Laws.

From what has been already said it is apparent that liberality as to parties to contested probates is an inherited tradition of great antiquity in courts of this character. Such acknowledged liberality seems to have been expressly recognized in modern cases in this state, not cited to me on the briefs of the learned counsel. In *Matter of Greeley*, 15 Abb. Pr. (N. S.) 393, in the year 1873, Surrogate Coffin held that any interest, however slight, or even the bare possibility of an interest, was sufficient to entitle a party to appear in opposition to the probate of a tes-

tamentary paper. Surrogate Coffin was an excellent surrogate, well instructed in the fundamental principles guiding courts of this character. In *Gombault v. Public Administrator*, 4 Bradf. 226, evidently on the ground of interest alone, Surrogate Bradford recognized the right of the public administrator and even of the attorney-general to appear, thus demonstrating that, in his opinion, in the abstract, others, besides next of kin or heirs-at-law, might have an interest. While there may be, I think, some doubt as to the attorney-general's right to protect escheats before office found (see *Matter of Smart*, 84 Misc. Rep. 336), yet where the state has a definite interest it is otherwise, as Surrogate Bradford said. In *Matter of Davis*, 182 N. Y. 468, 473, the Court of Appeals seems to proceed on the ground that " interest " alone entitles any one to appear in probate matters, whether next of kin or not.

Having now reviewed with some particularity the general principles, the statutes and the decisions regulating parties to probate proceedings, I shall proceed to my conclusion. The audience for probate is and always has been theoretically open to any one having the slightest interest. This interest is not determined by either the rules in chancery or in the common-law courts, but in this court is to be determined now primarily by the statute of this state, interpreted by the cognate decisions of courts of this character anywhere. There is no reason in this court why, even where there is a trust, the *cestui* having an equitable interest should not be allowed to appear separately and protect his own equitable interest even though the trustee also appears representing the legal title to the trust property. The equitable interest of a *cestui* is actual and sufficiently distinct, for the purposes of

this tribunal, to entitle the *cestui* to be heard separately if he so desires.

But quite aside from all the technical inferences advanced above, as a practical matter it makes no difference in this particular proceeding whether either the trustee alone or the *cestui* alone or both together appear to contest the probate.   If both appear the adjudication *in rem* is made only the more solemn and binding.   In point of fact it appears on the record that the *cestui* appears by the same counsel representing another actual interest not disputed.   To have the same counsel represent of record the *cestui* also can harm no one; nor does it interrupt orderly procedure, while it may be an advantage to the decree to have the *cestui* heard in open court.

The decision will be that the status and interest of the *cestui* to file the objections to the probate is sufficient.

Decreed accordingly.