In the Matter of the Estate of ALPHONSE J. STEPHANI, Deceased.

Surrogate's Court, Clinton County, April 16, 1936.

*Topken & Farley* [*Philip F. Farley* and *Harry P. Kehoe* of counsel], for the proponent, Frankfurter Bank, Frankfurt, Germany, by Dr. Hans Borchers, German Consul General of the City of New York.

*Charles Irving Oliver,* as attorney of record, for City Bank Farmers Trust Company, and for Dr. Karl Stephani, Johannes Frederick Stephani and Marie Sasse, with *Harry C. Kohlhas,* Philadelphia, Penn., attorney in fact for said parties, in person; and, as attorney of record, for Rufus King Lennig, attorney in fact for Emma G. von Glaubitz, and, as attorney of record, for Emma G. von Glaubitz.

*Gillespie & O'Connor* [*George J. Gillespie, Jr.,* of counsel], with *Nicholas A. Donnelly,* attorney of record, for Sophie E. M. Leith and Maria J. M. Lawrence.

*James P. O'Connell* [*Thomas B. Cotter* of counsel], for the State Tax Commission.

HARRINGTON, S.   On April 10, 1891, Alphonse J. Stephani, then a resident of New York, was convicted of murder in the second degree and sentenced to be imprisoned for life.   He was first confined in Sing Sing Prison.   He remained there until January 8, 1903, when he was transferred, pursuant to chapter 520 of the Laws of 1899 (now Correction Law, § 383), to Dannemora State Hospital, an institution for insane convicts.   (See *Trust Co. of America* v. *State Safe Deposit Co.*, 109 App. Div. 665, for record of conviction and transfer, as above mentioned.)   He remained at Dannemora State Hospital until his death on February 1, 1935.

The instrument offered for probate is dated April 17, 1919, to which is attached a codicil executed on the same date.   Both are in the handwriting of decedent.   The executor named is Frankfurter Bank, of Frankfurt-on-Main, Germany.   Decedent was survived by six first cousins, four of whom reside in Germany and two in the State of New York.   Briefly, the instrument purports to disinherit all persons of blood relationship to the decedent, referring especially to certain relatives.   The entire estate, stipulated by counsel as being in excess of $400,000, is bequeathed to the petitioner bank as trustee for the following purposes: " to retain the principal as a ' Stephani Fund ' or ' Alphonse J. Stephani Foundation ' in perpetuity.   The income to be dispensed or applied in such way or manner as may be decided on by the directorate of said bank, either for the benefit of or embellishment of the dorf of Hornbourg von der hope of the City of Frankfort-on-Main, Germany in whole or in part for some charitable purpose, such as the maintenance of a villa, cottage, house or home in the former village or other memorial purpose in Europe.   A bread line similar to such in N. Y. City is suggested and operated same as the St. Luke's Chapel, N. Y."

Dr. Roger Dexter and Harry L. Dow were examined as attesting witnesses to the instrument offered for probate.   Dr. Dexter is a qualified examiner in lunacy.   He came to the Dannemora State Hospital in 1907 as an interne and was first assistant superintendent of the hospital at the time of the execution of the instrument offered for probate.   Mr. Dow now is and was at the time of the execution of the instrument in question an attendant at the Dannemora State Hospital.   At the first examination of these attesting witnesses, they described the circumstances attending the execution of the same.   Briefly, Stephani told Dr. Dexter that he was going to make a will and asked him if it would be all right if he did so.   The doctor replied in the affirmative.   At a later date Stephani told Dr. Dexter that he had made his will and would like him to sign it as a witness.   The will was then executed by

Stephani and the attesting witnesses. In the first examination Dr. Dexter was asked if he believed Stephani had testamentary capacity and he replied in the negative, stating that he believed Stephani was mentally incompetent to make a will; that his judgment was based on his observation of Stephani over a period of twelve years. When asked why he signed as a witness to the instrument, if at that time he thought Stephani did not have testamentary capacity, Dr. Dexter replied: " A. Living with those fellows, we tried to get along with them as easily as possible without antagonizing them. He had various ideas that characterized his mental condition and as a physician who had charge of him I wanted to get along with him as easily as possible and when he asked me if he could make a Will I said ' Yes ' and when he asked me to sign it I said I would. I felt that as the years went on, if it was necessary that this come up that thing would be decided. Q. In other words you were just humoring him at that time? A. Yes, to get along with him as easily as possible. If he wanted to make the thing, he would have asked someone else. He asked me about making it, which I think was quite out of the ordinary. Some of them are not free with the staff. They are quite apt to side step them and not be free with them, but he asked me about this and wanted to know if he could do it and I said ' yes go to it ' and when he asked me to witness it I said all right."

Mr. Dow testified that he was an attendant in the ward in which Stephani was a patient at the time the alleged will was executed; that he did not believe Stephani had capacity to make a will on the date of the alleged will, based on his observation of him for at least four months prior to the execution thereof.

Objections were filed to the probate of this instrument by all parties to the proceeding other than the proponent. A jury trial was demanded and a date was set for the trial. Meantime, all of the interested parties, other than the State Tax Commission, executed a compromise agreement, pursuant to section 19 of the Decedent Estate Law, in and by which the method of distribution of the estate was fixed, regardless of whether or not the above-mentioned instrument would be admitted to probate. The basis of such an agreement was stated to be the possibility of the invalidity of the instrument offered for probate and the invalidity of the trust purported to be established therein; also, the fact that there had been placed on file in the surrogate's office a previous will executed by decedent on April 12, 1890; that if the latter instrument was offered for probate the judicial construction of certain parts thereof would have to be secured to determine whether certain bequests had lapsed; that in order to save much litigation

and expense, the interested parties under both instruments and those who would be interested parties in case decedent was adjudged to have died intestate had executed such agreement.

Upon presenting the above compromise agreement for the approval of this court, all prior objections to the probate of the instrument offered for probate were withdrawn. The attesting witnesses, above mentioned, were thereupon further examined by the attorney for the proponent. This examination indicated that the usual formalities attending the execution of a will were complied with. Both of the attesting witnesses testified that they believed the decedent at the time of the execution of the instrument in question was aware of the extent of his property, that he knew who his relatives were, and that he knew he was executing his will. An examination of these witnesses by the court, however, did not furnish any satisfactory basis for the conclusion of these witnesses that Stephani knew the extent of his property. Eight letters from the decedent to the Frankfurter Bank were offered in evidence presumably to show decedent's knowledge of his financial affairs, but the earliest one is dated June 21, 1923, and the last one is dated February 1, 1934. No correspondence by the decedent with the banks handling his affairs, prior to the date of the instrument offered for probate, was offered in evidence. While these witnesses testified that Stephani had received accounts from his bank prior to and after the date of the alleged will, there is only slight proof that he discussed these items therein with the witnesses. Accordingly, I do not think the proof is sufficient to justify the conclusion of these witnesses that Stephani knew the extent of his property. When it was called to Mr. Dow's attention that upon the previous hearing he had testified that he did not think Stephani had testamentary capacity, he said, "mentally I do not, but legally I think he did." After the court defined the requirements of testamentary capacity, Mr. Dow testified that he believed Stephani had such at the time of the execution of the instrument offered for probate. When asked if he knew why Stephani disinherited his relatives, he replied that Stephani had an idea that they were persecuting him and keeping him locked up in prison. Whether there was any basis for such ideas he did not know. In a lengthy examination of Dr. Dexter, who is a psychiatrist, while he testified that he believed Stephani had testamentary capacity as the same was correctly defined, he could not state definitely whether Stephani knew the extent of his property; that he believed that what Stephani did was influenced by his mental condition; that mentally his actions were influenced by his mental condition to such an extent that he did not think he acted as he should; that

while Stephani knew perfectly what he was doing, his actions were influenced by what he had believed had happened; that Stephani had delusions of persecutions dating back to his school days as a boy; that he believed he was sent to the hospital by his relatives and was being kept there by the relatives on his mother's side of his family; that he had seen correspondence in which Stephani had called his mother names; that while he thought Stephani was capable of making a will mentally, that as an expert he believed Stephani was an insane man; that his type of insanity was paranoia. Finally, after the court had again defined testamentary capacity and asked the witness whether with such a definition he believed Stephani had testamentary capacity, the witness stated, " Yes, I would say he had, with mental reservations as far as my belief as to his mental condition."

Two other physicians who had served at Dannemora State Hospital were examined. It appears that the observation of Stephani by one of these witnesses was from a period of 1922 to 1929, the commencement of which was three years after the date of the instrument offered for probate. The other physician had but a short assignment in Dannemora State Hospital in 1919. The conclusion of these two physicians as to their belief that Stephani had testamentary capacity at the date of the instrument offered for probate is not, in my opinion, supported by the testimony given by them on this issue.

Section 144 of the Surrogate's Court Act places a burden on the surrogate, before admitting the will to probate, to inquire into all the facts and circumstances in connection with its execution, including its genuineness, the validity of its execution and the competency of the testator to execute the same. After the surrogate is satisfied that all of these matters have been fully complied with, then he should admit the will to probate, otherwise he should deny probate. Authorities are numerous to the effect that in a probate proceeding the burden of proof as to the due execution of the will and the testamentary capacity of the testator remains upon the proponent. (*Delafield* v. *Parish*, 25 N. Y. 9, 34, 35; *Matter of Strong*, 179 App. Div. 539, 545; *Matter of Smith*, 180 id. 669, 672, 673; *Matter of Cook*, 185 id. 914, 915 [Third Dept.]; affd., no opinion, 226 N. Y. 562; *Matter of Allaway*, 187 App. Div. 87, 88.) In the instant case the proof offered to show testamentary capacity of the decedent is insufficient to satisfy the conscience of this court on that issue, having in mind the fact that the decedent for the last thirty-two years had been confined in the Dannemora State Hospital, where only persons are confined who in the opinion of the physicians of the penal institutions of this State are insane,

although they have not been judicially declared insane, pursuant to article 81 (§§ 1356–1384) of the Civil Practice Act. I am of the opinion that the confinement of the decedent in the Dannemora State Hospital for the period of years above mentioned is of itself sufficient to repudiate the usual presumption of sanity as a *datum* in this case. In so stating, I do not wish to be understood as indicating my belief as to the insanity of the decedent, as there has never been any formal adjudication of sanity pursuant to the statute. However, the circumstances surrounding decedent's confinement at Dannemora State Hospital, together with the conflicting testimony of Dr. Dexter, who observed him over a period of several years immediately prior to the execution of the will, on the question of testamentary capacity, in my opinion, places a greater burden upon proponent on the issue of testamentary capacity than obtains in the usual case where probate is not contested. Because that burden of proof has not been, in my judgment, sufficiently assumed, the proponent has left great doubt in the mind of this court as to the testamentary capacity of the decedent. In *Delafield* v. *Parish* (*supra*, pp. 34, 35) the court, in commenting upon the duty of a court in a probate proceeding, stated the same to be, among other things, as follows:

" 3. That if, upon a careful and accurate consideration of all the evidence on both sides, the conscience of the court is not judicially satisfied that the paper in question does contain the last will of the deceased, the court is bound to pronounce its opinion that the instrument is not entitled to probate."

" 5. That it is not the duty of the court to strain after probate, nor in any case to grant it, where grave doubts remain unremoved, and great difficulties oppose themselves to so doing."

By virtue of the duty imposed on this court by section 144 of the Surrogate's Court Act, and the law applicable thereto as cited in the last above-mentioned case, the probate of the instrument offered herein is denied.

The other matter involved in this proceeding is apparently a novel one in this State. Shortly prior to the date fixed for the final hearing in this matter, the State Tax Commission, through its local counsel, petitioned this court to intervene in this probate proceeding, alleging as a basis for the right to intervene the alleged value of the estate of the decedent; that if the alleged 1919 will of decedent was admitted to probate, the entire estate would go to the Frankfurter Bank, Germany, in trust for charitable purposes and that the State of New York would receive practically no inheritance taxes thereon; that if the alleged 1890 will of decedent was admitted to probate the State of New York would collect

taxes in excess of $18,000; that if both alleged wills were denied probate, such transfer taxes would be in excess of $18,000. The petition also referred to the contradiction in the testimony of the attesting witnesses in their first examination and second examination, and alleged that there had been no cross-examination of the witnesses by reason of the fact of the execution of the compromise agreement relative to the division of the estate of the decedent, as above mentioned. The petitioner requested the right to intervene, file objections to the probate of the instrument offered for probate, examine the attesting witnesses and to have all further proceedings stayed until the hearing and determination of this application. Upon this petition a citation to show cause was issued and a hearing had upon the right of the State Tax Commission to intervene in this probate proceeding as a proper party.

The sole basis for the alleged right of the State Tax Commission to intervene in this probate proceeding is the assertion that the State Tax Commission should be held to be included as one of the parties authorized to file objections to the probate of an alleged will as defined in section 147 of the Surrogate's Court Act, by reason of the use therein of the words " or otherwise " together with the definition of " persons interested " as used in said section and as defined in subdivision 10 of section 314 of the Surrogate's Court Act. In other words, while the State Tax Commission is not mentioned specifically in section 147 of the Surrogate's Court Act, counsel for the petitioner alleges that the State Tax Commission has a contingent pecuniary interest in this estate sufficient to make it a " person interested " in this proceeding as the term is defined in subdivision 10 of section 314 of the Surrogate's Court Act. Section 147 of the Surrogate's Court Act has been in its present form since 1914, being formerly section 2617 of the Code of Civil Procedure. Without discussing in detail the many cases cited by the attorneys for the petitioner as indicating the right of the State Tax Commission to intervene in this proceeding, in my opinion none of these cases is in point with the matter herein involved. The cases so cited as indicating the pecuniary interest necessary to permit a person to intervene in such a proceeding are *Matter of Davis* (182 N. Y. 468); *Matter of Coryell* (4 App. Div. 429); *Matter of Zimmerman* (104 Misc. 516); *Matter of Greeley* (15 Abb. Pr. [N. S.] 393). The only case cited in point with respect to the right of the State of New York to intervene in a probate proceeding is *Gombault* v. *Public Administrator* (4 Bradf. 226). There the court allowed the State of New York to intervene in a probate proceeding of a decedent who was survived

by no heirs. If the alleged will was denied probate, the property would escheat to the State of New York. In my opinion, in such a case, the State of New York is a necessary party under subdivision 3 of section 54 and section 140 of the Surrogate's Court Act. I have been unable to find any authority in this State indicating that the State Tax Commission or the State of New York has requested or been granted the right to intervene in a probate proceeding, where the property did not escheat to the State of New York, in case of intestacy. The alleged pecuniary interest of the State Tax Commission in this estate, sufficient to permit it to intervene in this proceeding, is based solely upon the allegation that the amount of inheritance taxes to be assessed against the estate is dependent upon the action of this court in admitting to probate or denying probate to the 1919 or 1890 alleged wills of the decedent. It is admitted that section 140 of the Surrogate's Court Act, defining who shall be cited upon a probate proceeding, does not include the State Tax Commission. Counsel for the petitioner urge, however, that this only indicates that while the State Tax Commission is not a necessary party to the probate proceeding, it may be a proper party to the proceeding by virtue of section 147 and subdivision 10 of section 314 of the Surrogate's Court Act, as above mentioned. If these sections are to be so construed, then it would mean in effect that the State Tax Commission can interpret these sections as a privilege of intervention in probate proceedings rather than a duty to so intervene, in every probate proceeding in this State.

I do not believe that these sections can be so construed either from their context or from any alleged legislative intent. Assuming that the 1919 will were to be probated, there is no evidence to indicate that the gift to the Frankfurter Bank in Germany would not be taxable even though the gift would appear to be charitable in nature, as this would involve the judicial determination of whether such gift constituted a charitable gift as defined in subdivision 3 of section 249-s of the Tax Law. The amount of the estate taxes due upon this estate can only be determined after there has been a final adjudication of whether decedent died testate or intestate. When that has been determined, then the procedure for determining the estate tax, if any, due the State of New York will be had pursuant to statute and in that proceeding, the State Tax Commission by virtue of the provisions of the Tax Law will have its day in court, not as a privilege to be exercised in its discretion, but as a duty imposed upon it by statute to determine the amount of estate taxes due the State of New York, if any. The Tax Law provides in detail the method for determining

inheritance taxes due the State of New York upon estates and prescribes the duties of the State Tax Commission in respect thereto. There is no statutory provision authorizing the State Tax Commission, nor the State of New York, to intervene in a probate proceeding under circumstances similar to the case at bar, nor are there any cases of record where such a right or privilege has been asserted, much less granted.

Having in mind the function of the State Tax Commission in respect to estate taxes as being a *duty* to collect all such taxes due the State of New York, it does not seem logical to assert that in a probate proceeding, where there will be no escheat to the State of New York in case of intestacy, the State Tax Commission, in the exercise of its *discretion*, may, if it desires, become a party to such proceeding but has no *duty* to do so. If, as and when the Legislature deems it advisable, in order to protect the interest of the State of New York in collecting estate taxes, to provide by statute that the State Tax Commission may become a necessary party to all probate proceedings in this State, it seems certain that such statute will not be a permissive one but rather a compulsory one. Otherwise, interested parties in a probate proceeding will not know until the return day for the probate whether the State Tax Commission is to assert its right to become a party to such proceeding, unless as a matter of practice and to avoid confusion a citation for probate in every instance is served upon the State Tax Commission or the State of New York. Here, the right of the State Tax Commission is asserted primarily because of the fact that the alleged will offered for probate purports to give the entire estate to an alleged charitable purpose. It is significant as indicating the intent of the Legislature of limiting the State of New York in meddling with the right of its citizens to bequeath their property in such manner as to them seems proper, that a recent amendment to section 17 of the Decedent Estate Law provides that the validity of a devise or bequest to charity of more than one-half of a decedent's estate under the terms of said section may only be contested by the persons therein mentioned, of which neither the State Tax Commission or the State of New York are included. This, despite the fact that the purpose of that section is to limit the amount of bequests or devises to charitable purposes under the conditions therein mentioned, in order to enlarge the estate tax which will be due thereon to the State of New York. The Tax Law, the Decedent Estate Law or the Surrogate's Court Act make no provision for the intervention of the State Tax Commission or the State of New York in a probate proceeding under the circumstances similar to the one in question. Having in mind

the fact that since 1885 the State of New York has levied inheritance taxes, I can only conclude that there is no provision in the law of the State of New York at this time which would warrant this court in permitting the State Tax Commission to intervene as a necessary or proper party to this proceeding. The State Tax Commission is not even required to be a party to a compromise agreement provided for by section 19 of the Decedent Estate Law. It is also significant that section 162 of the Surrogate's Court Act and section 249-t of the Tax Law expressly provide that the State Tax Commission is a necessary party in a proceeding for ancillary letters testamentary or of administration or for original letter testamentary or of administration in the estate of a decedent who at the time of his death was not domiciled within this State. It seems reasonable to believe in view of these sections expressly stating the instances when the State Tax Commission is a necessary party to a probate proceeding or for the issuance of letters of administration, that no legislative intent can be found in the other provisions of the Surrogate's Court Act and the Tax Law as herein mentioned, to indicate that the State Tax Commission should be a necessary or proper party to a probate proceeding under circumstances such as exist in the instant case. The petition of the State Tax Commission to intervene in this proceeding is, therefore, denied.

Prepare decree accordingly.